IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JICARILLA APACHE NATION,
Plaintiff,
v.
UNITED STATES OF AMERICA,
Defendant.

No. 02-25 L
Judge Francis M. Allegra

**DEFENDANT'S MOTION PURSUANT TO SECTION 6 OF THE MARCH 19, 2004 ORDER AND BRIEF IN SUPPORT THEREOF**

## I. INTRODUCTION

On March 19, 2004, the Court issued a records retention order ("RRO") requiring the parties to "take reasonable steps to preserve every document, data, or tangible thing . . . containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation." Pursuant to Paragraph 6 of the RRO, Defendant herein requests that the Court modify the RRO to remove any doubt that agencies may continue to take actions which do not make information that is subject to the RRO incomplete or inaccessible, actions such as the routine electronic transfer of data to an archival system. To accomplish this clarification, the Defendant requests that the final phrase of Paragraph 5(b) of the RRO be modified modestly so that the paragraph would read as follows (modified portion is underlined):

> "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things containing information reasonably anticipated to be subject to discovery if such actions would make that information incomplete or inaccessible.

The underlined wording would replace the phrase that currently reads as follows: " . . . or mutation

of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible." The need and rationale for this requested change is described below.

## II. ARGUMENT

The RRO calls for "defendant, its agencies, and its employees" to "take reasonable steps to preserve every document, data, or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to the subject matter involved in the pending litigation." RRO ¶ 1. The RRO further provides 1) that the term "preservation . . . is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery" and 2) that "[p]reservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incinerating, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make the material incomplete or inaccessible." *Id.* ¶ 5(b).

In the course of implementing the Court's Order, questions have arisen concerning the intended operation of Paragraph 5(b) quoted above. The final phrase is potentially ambiguous in that the qualification that the material is rendered "incomplete or inaccessible" arguably applies only in cases of "negligent or intentional handling" of the material. It is not clear whether the qualification applies to other specified actions such as testing, wiping, relocation or migration. Thus the RRO could be read to forbid all such actions, even if they do not make the material incomplete or inaccessible. Such a reading expands the RRO beyond its goal of maintaining the integrity of discoverable information, because, if information is not made incomplete or inaccessible by actions such as testing, wiping, relocation or migration, its integrity has not been compromised.

If Defendant's agencies were required to comply with the literal reading of the definition of preservation, they would be prohibited from allowing any movement or manipulation, physically or electronically, of documents, data, or tangible things containing information subject to discovery, even if such were to occur in the ordinary course of an agency's business and did not make information incomplete or inaccessible. Such a prohibition imposes unreasonable burdens on the agencies, yet produces no concurrent increase in the protection afforded the data.

For example, as written, the RRO could be literally interpreted to prohibit the movement of a personal computer from one desk to another. The RRO could also be interpreted to prohibit an agency employee from sending documents containing potentially relevant information as attachments to e-mails even though such an action might be a routine agency procedure and would not change the content of the attachment. Such a prohibition would seriously encumber the day to day work undertaken by any employee who must deal with such documents, and affords no additional protection over the documents. Attaching a document to an email creates a copy of the document that travels with the email message. It does not eliminate the original document. Thus preventing relocation of the document does not enhance the level of protection afforded the original document.

In fact, the prohibition could lead to less protection. For example, if interpreted literally, the RRO would prevent the routine archiving of data from online electronic systems because archiving involves the relocation of data.[1] Such a relocation prohibition frustrates the very results desired from the RRO: the reasonable and prudent steps to preserve potentially discoverable information. Moreover, since archiving is undertaken to keep online systems functioning optimally, the inability to archive data would have obviously negative implications for the future continued functioning of any system containing potentially discoverable material without any concurrent positive effect on the preservation of data within that system. Archiving preserves the data and prevents any catastrophic

---

[1] Here, "archiving" means the movement of data from one system to another, different system, media and/or location, which may result in the removal of the data from the original system.

overloads on the online system as well. *See Lee, Active Archiving Minimizes Data Growth*, COMPUTERWORLD STORAGE NETWORKING WORLD ONLINE (Sept. 23, 2002), http://www.snwonline.com/tech_edge/active_archiving_09-23-03.asp?article_id=161 (viewed March 1, 2005) ("Database growth degrades performance and limits the availability of mission-critical applications and data warehouses . . . . Overloaded relational databases limit productivity and increase costs.").

A literal reading of this language could also be construed as preventing the wiping of personal computer hard drives, even when all potentially relevant data present on those hard drives has been downloaded or copied from the hard drive to another media prior to an agency's wiping of the drive. To ensure that it does not run afoul of the preservation obligation as applied to hard drives, the Department of the Interior, for example, has stopped reusing hard drives of certain employees who have left the Agency or who have received computer upgrades. Rather, Interior is retaining all of those employees' used hard drives, despite the fact that the data is migrated elsewhere and thus the wiping would not result in any loss of data.. *See* Defendant's Supplemental Status Report Describing Compliance With the March 19, 2004 Order (March 18, 2005) at pp 14-15.[2]

In a similar vein, a literal reading of the Order carries negative implications for systems currently in development. For example, FMS is currently moving its systems toward "enterprise architecture" where data from multiple databases and feeder systems will be funneled into a central "data warehouse" for storage and use by various applications. Declaration of Richard L. Gregg ("Gregg Decl.") (March 11, 2005) ¶ 2; *see also U.S. General [now Government] Accounting Office, Enterprise Architecture Use Across the Federal Government Can Be Improved ("EA Report"), Report No. GAO-02-06 (Feb. 02).* The data will be preserved in the "data warehouse" and redundant copies will be removed from other databases or feeder systems. This approach to systems design,

[2] Another approach to preserving information that may be subject to discovery in this litigation has been implemented by the Department of Treasury's Financial Management Service (FMS). FMS, because it has taken steps to ensure that any information potentially discoverable in this action that might exist on a personal computer hard drive is preserved elsewhere, continues, for security reasons, its practice of wiping hard drives of old (surplus) PCs. Gregg Decl.¶ 3.

among other things, streamlines the overall system by eliminating redundant sets of data. Gregg Decl. ¶ 2; *see also EA Report*. A literal reading of the Order, however, would preclude the removal or migration of data from other database or feeder systems, which would be contrary to the "data warehouse" concept and thus defeat one of the underlying design elements of "enterprise architecture." This proscription is unnecessary to preserve the data because, so long as the data resides in the central "data warehouse" (which would be backed up), any copy of it in any other database or feeder system would be redundant and add nothing to the continued integrity of the data.

The agencies have undertaken reasonable measures to ensure the continued integrity of any material potentially subject to discovery in this litigation. *See* generally Defendant's Supplemental Status Report Describing Compliance With the March 19, 2004 Order (March 18, 2005). As such, the wholesale prohibitions seemingly imposed by a literal reading of the RRO are burdensome and unnecessary. Accordingly, Defendant requests that the Court modify the RRO to clarify that the enumerated actions – partial or full destruction, alteration, testing, deletion, shredding, incinerating, wiping, relocation, migration, theft, or mutation – should be prevented only if they would make the protected material incomplete or inaccessible.

Plaintiff has declined to take a position on this motion until it has had the opportunity to review Defendant's Supplemental Status Report and exhibits which will be filed on March 18, 2005.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion Pursuant to Section 6 of the March 19, 2004 Order.

Respectfully submitted this 18th day of March 2005.

THOMAS L. SANSONETTI
Assistant Attorney General

/s/ Robert W. Rodrigues
ROBERT W. RODRIGUES
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 353-8839
Fax: (202) 353-2120

Attorney for Defendant

OF COUNSEL:

BRENDA RIEL
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JICARILLA APACHE NATION<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 02-25 L<br>Judge Francis M. Allegra |

[PROPOSED] ORDER MODIFYING
MARCH 19, 2004 ORDER

Upon consideration of Defendant's Motion Pursuant to Section 6 of the March 19, 2004 Order and its Brief in Support thereof, it is hereby

**ORDERED** that the motion is granted; and it is further

**ORDERED** that paragraph 5(b) of the March 19, 2004, Order is modified to read as follows:

> "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things containing information reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things containing information reasonably anticipated to be subject to discovery if such actions would make that information incomplete or inaccessible.

SO ORDERED.

Date: ______________________

______________________________
HON. FRANCIS M. ALLEGRA
Judge, Court of Federal Claims