IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JICARILLA APACHE NATION, f.k.a. )
JICARILLA APACHE TRIBE, )
)
)
Plaintiff, )
v. ) No. 02-25 L
) Judge Francis M. Allegra
UNITED STATES OF AMERICA, )
)
Defendant. )
)

**DECLARATION OF RICHARD L. GREGG**

I, Richard L. Gregg, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am currently employed by the United States Department of the Treasury, Financial Management Service (FMS), as Commissioner. The mission of FMS is to provide central payment services to federal program agencies, operate the federal government's collections and deposit systems, provide government-wide accounting and reporting services, and manage the collection of delinquent debt. I have been employed by Treasury for 35 years and have been in my current position since February 1998. As Commissioner, I have responsibilities for the overall operations of FMS. In addition, I have been extensively involved in the Individual Indian Money (IIM) and Tribal trust litigation as it has affected FMS. The matters set forth below are true to the best of my knowledge, or are based on information I have received from FMS employees.

2. FMS acts as the federal government's money manager, providing centralized payment, collection, and reporting services for federal government agencies. FMS also oversees the federal government's central accounting and reporting system, keeping track of the federal

**EXHIBIT 9**

government's monetary assets and liabilities. Other than payments FMS may make at the direction of the program agency (by check or electronically), and certain deposits made by electronic funds transfers (EFTs) at the direction of the program agency, none of FMS' organizational responsibilities are known to generate documents tied directly to any tribe, including the Jicarilla and Laguna tribes. Instead, due to the nature of its mission and organizational responsibilities, the data maintained by FMS is, for the most part, unsegregated (*i.e.*, information related to one agency is not stored separately from data for any other agency) and summary level (*i.e.,* identifiable to the Department of the Interior but not to a particular tribe, or reflecting aggregate transactions as opposed to individual transactions).[1]

3. FMS records its activities on electronic media, but, except for payments made to the Jicarilla Apache Nation by or at the direction of the Department of the Interior and certain deposits made by electronic funds transfers at the direction of Interior, these electronic records cannot show what funds, if any, belong to the Jicarilla Apache Nation.

4. FMS also records certain activities of other federal agencies on electronic media, including information reported by Interior about the checks it has issued, including checks issued to tribes. Since April 2000, FMS has been recording on electronic media payee names and other information obtained from negotiated Treasury checks issued by Interior's Office of Trust Fund Management (OTFM) in an electronic system that FMS established as a result of the *Cobell* litigation, enabling those checks to be searched by payee name. Prior to that date, none of FMS's electronic systems could be searched by payee name to locate an OTFM-issued check.

---

1. The only exception, besides payments and certain deposits made by electronic funds transfers, would be **paper** records pertaining to the individual tribal accounts that existed prior to 1974, predating the electronic systems that generate the data discussed herein.

5. FMS is currently retaining indefinitely electronic data that records the funding, disbursement, and accounting activities described in the April 2004 status report, either in a system's storage device or in archival storage media. This data resides primarily within those FMS systems that perform centralized payment (disbursements such as payments to Social Security recipients), collection (handling of receipts sent to the Government, such as income tax collections), and accounting and reporting services for the Federal Government. In particular, the FMS systems with data potentially discoverable in this action are:

A. the Check Payment & Reconciliation (CP&R) system (and the report management system used with it, CA-BUNDL), a centralized computer system that is the repository for information about all the checks issued by the Federal Government since the system was established;

B. STAR, a system of central summary accounts that together comprise a consolidated record of the Government's cash financial operations. STAR aggregates all federal government receipt and disbursement transactions;

C. the Payments and Claims Enhanced Reconciliation (PACER ON-LINE) system, an integrated series of systems/processes that maintains information about electronic and check payments issued by FMS, including check payment status and claims activity. Its predecessor, PODSARS, performed similar functions;

D. the Treasury Receivable Accounting & Collection System (TRACS) (that also uses CA-BUNDL[2] as a report management tool), a debt recovery and accounting

2. CA-BUNDL is an online report management software system utilized in conjunction with CP&R and TRACS. It allows the online viewing of reports and enables retention of electronic versions of reports, which saves paper and eliminates the need to print and store bulky paper reports. Using CA-BUNDL, critical reports can be

system that performs all accounting, financial reporting, debt billing and collection activities related to the re-crediting of funds associated with Treasury check claims and cancellations.[3]; and

E. the OTFM Activity Tracking System (OATS), a system developed in 2000 as a result of the *Cobell* litigation that records information related to disbursements made under OTFM's disbursing officer symbol "4844" – specifically, check issuance information from OTFM, check negotiation information for checks issued by OTFM from the Philadelphia Federal Reserve Bank's "OTFM Data Entry System" (discussed in paragraph 9.B., *infra*), and information about electronic payments made by FMS at OTFM's direction.

6. These systems are designed to run on mid-tier or mainframe systems; desktop computers can be used only as an access point or gateway to these systems. The electronic data for these systems is stored on a Direct Access Storage Device (DASD), which is similar in function to a PC hard drive. The data on the DASD is cumulative, encompassing all current and historical data for the current systems. FMS routinely upgrades or replaces the DASD, but ensures that the data is preserved by moving a complete copy of that data to the new storage device.

7. If relevant data needed to be removed from the DASD for archival storage, FMS would follow a plan that ensures the data's retention in another media.

---

viewed on-line, archived and retained electronically. The archived reports can be recalled later as needed.

3. For example, if a check is lost, stolen, or wrongfully negotiated, the payee submits a claim and, if approved, a replacement check is issued. Meanwhile, TRACS records and accounts for FMS's collection or recovery of the proceeds of the initial check. TRACS is also the system used to transfer funds back to the agency when a check is cancelled.

8. Three other FMS systems might also contain information potentially discoverable in this action. They are *a)* the Limited Payability Report File, containing information about check claims investigations, *b)* a series of electronic databases created as a result of the *Cobell* litigation from paper documents of uncashed checks, and *c)* Lotus Notes, FMS's email application. The first two systems would have information related to tribal trust funds only by happenstance, if a tribe was recorded as the payee on a check claim under investigation or on a check that went uncashed. The data from these files are being retained indefinitely. With regard to Lotus Notes, as discussed in Treasury's original status report, FMS has established a dedicated mailbox for Jicarilla- and Laguna-related email and electronic documents and has instructed its employees to forward copies of all Jicarilla- and Laguna-related email and electronic documents to that mailbox.

9. Two systems used by FMS that might have data potentially discoverable in this action are maintained by third-parties on behalf of FMS. They are:

A. CA$HLINK II, a cash concentration and information system used to manage the receipt of funds collected by the Federal Government, maintained for FMS by Riggs Bank and the Richmond Federal Reserve Bank (FRB), and

B. ODES (OTFM Data Entry System), a system for recording information obtained from checks issued by OTFM as those checks are negotiated and paid through the Federal Reserve system, maintained for FMS by the Federal Reserve Bank (FRB) in Philadelphia.

10. As with the systems FMS manages itself, if relevant data must be removed from these systems for archival storage, FMS would require the third parties to follow a plan that ensures the data's retention in another media. For example, data from CA$H-LINK, the predecessor system to CA$HLINK II, was archived onto DVDs that are being retained by FMS.

11. FMS protects its systems and applications from catastrophic loss through the creation of business continuity (also known as disaster recovery) backup tapes. Business continuity tapes are designed to permit the wholesale restoration of data to a system in the event of a disaster; such tapes are not designed to be used (or allow access to the data on them) independent of the system that they back up. In other words, the contents of the tapes are generally intelligible and useful only to and in connection with the system being backed up; they are not necessarily intelligible or useful independent of that system. FMS creates new backup tapes at regular intervals and re-uses these tapes. A full set of backups captures all relevant data from previous backup tapes as well as any new data accumulated in the operating system or application being backed up.

12. FMS also requires its third-party system managers to protect the systems operated for FMS through the creation of backup tapes at regular intervals.

13. In the context of FMS's systems and applications used to perform payment, collection, and accounting and reporting services, "metadata" refers to data that are attached to and travel with other electronic data automatically, so that data can be identified, located, linked, or made accessible. FMS is preserving metadata to the same extent that it is preserving any

electronic data that evidences FMS's payment, collection, and accounting and reporting activities involving tribal trust funds.

14. In the context of FMS's systems and applications used to perform payment, collection, and accounting and reporting activities, "computer and network activity logs" are general system logs (*e.g.*, log-in data: who logged on, for how long, etc.) and are not considered data files. FMS is not taking any measures beyond its usual backup procedures to preserve computer and network activity logs for purposes of this litigation.

15. FMS's web site is hosted by the Bureau of the Public Debt, and can be found at http://www.fms.treas.gov. The information on the pages at this web site is static, not dynamic (*i.e.*, it consists of straight text or links to text). FMS receives a monthly backup CD of its website from BPD that is retained indefinitely. Additionally, FMS itself makes interim copies of its website and retains those copies for as long as they are needed (after which time they are written over).

16. FMS records its payment, collection, and accounting and reporting activities involving tribal trust funds in the systems set forth in Paragraphs 5 and 9, *supra*, not on employees' desktop personal computers (PCs). FMS employees may access office automation systems through their desktop PCs, and the electronic documents created using those systems (such as e-mail, word processing documents, or spreadsheets) may be saved to either the PC's hard drive or a network drive. In the remote event that an FMS employee had a potentially discoverable electronic document on his or her PC hard drive, that document should also have been copied to FMS's dedicated mailbox (discussed in the status report filed April 26, 2004).

FMS's dedicated mailbox, along with the rest of FMS's email system, resides on a network drive, not on any PC hard drive. Accordingly, FMS is not retaining PC hard drives for this litigation. When a PC hard drive becomes antiquated or otherwise unsuitable for use, FMS replaces it.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 4TH day of March, 2005.

RICHARD L. GREGG