IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JICARILLA APACHE NATION,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 02-25L<br>Judge Francis M. Allegra |

THIRD DECLARATION OF L. DOW DAVIS

I, L. Dow Davis, hereby declare, pursuant to 28 U.S.C. 1746, that:

1. I am employed by the United States Department of Energy ("DOE") as a litigation attorney in the DOE Office of General Counsel.

2. In that capacity, I am assigned as a point of contact for DOE relating to the Motion for Record Retention Order ("RRO") filed by Plaintiff in the above-captioned case and the Court's March 19, 2004, Order on the same subject. The information contained in this declaration is based on personal knowledge, and information furnished to me by DOE employees.

3. As shown in my Second Declaration in this case, dated April 22, 2004 ("Second Declaration"), DOE has fully complied with the retention provisions of this Court's RRO dated March 19, 2004, by, inter alia, sending an e-mail message ("DOECAST") from the General Counsel of DOE to all DOE employees and contractors nationwide, advising them of the RRO and their duty to preserve all relevant "documents, data, or tangible things" in their custody. Second Declaration, paras. 8-10.

EXHIBIT 14

4. As explained in my Second Declaration, dated April 22, 2004, DOE has identified only two offices holding documents arguably relevant to this case. These two offices are the DOE Legacy Management Office at Grand Junction, Colorado ("Grand Junction") and the Office of Civilian Radioactive Waste Management ("OCRWM").

6. In regard to Grand Junction, the few arguably responsive documents identified are mainly historical reports about discontinued Atomic Energy Commission programs and these few documents have been identified and are being preserved in hard copy. For instance, Grand Junction holds only four historical documents that arguably relate to the Jicarilla Apache Nation.

7. DOE has already furnished to Plaintiff a list of all of the Grand Junction documents held, a copy of some of the documents, and a list of documents available to the public. As noted in my two previous declarations, to assist the Plaintiff in its search for documents, we attached copies of Grand Junction records in what was designated as Attachment No. 2 to my First Declaration dated November 5, 2003. In addition, we furnished a list of other Grand Junction documents being held in the Federal Records Center in Denver that are being preserved and retained under a 25-year retention period. These documents were designated as Attachment No. 3 to my First Declaration. A similar list of Grand Junction records permanently stored at the National Archives in Denver that are publicly available to Plaintiff was designated as Attachment No. 4 to my First Declaration. Because they are historical documents and few in number, these documents are being held in hard copy and not as electronic documents. Therefore, they cannot be backed up. Furthermore, to date, there has been no acknowledgment or expression of

**interest by the Plaintiff in these documents.**

**8. The Court's record retention order requires that the term "documents, data, and tangible things" is to be interpreted broadly to include, inter alia, voice-mail, e-mail, telephone message records or logs, computer and network activity logs, backup data, metadata and web pages. RRO para. 5(a) at 13-14. Below is a discussion of DOE's preservation efforts for Grand Junction.**

**a. Backup Data: Because the Grand Junction documents are historical and are being preserved in hard copy, DOE has not been taking any steps beyond its usual backup regimen to retain computer files. I am informed that Grand Junction currently performs a full daily backup of its e-mail server, Windows 2000 Application Servers, and Database Servers. The Novell Servers, that hold most of the user files, are fully backed up twice a week with differential backups between the full backups. Grand Junction currently rotates full backup tapes every two months. Were Grand Junction to keep a daily "snapshot in time" by doing a full backup every day for e-mail, web page, metadata, and network logs, I am informed that the cost would be $455,000 a year, plus storage and personnel costs for the additional tapes needed. Grand Junction would need 175 tapes a week (35 tapes/day times 5 work days) for daily backup, equaling 9,100 tapes per year. Since these tapes cost approximately $50 each, the yearly additional cost for daily backups works out to be approximately $455,000 per year. Currently, full backup of the Novell servers takes as long as eleven hours to complete (6:00 P.M. to 5:00 A.M.). Therefore if DOE were required to indefinitely retain backups, Grand Junction would probably need**

**additional backup equipment to shorten this time so users would not be adversely affected. Less frequent backups would result in proportionally lower costs.**

**b. Metadata: Metadata consists of information contained within a document, a web site, or if someone has entered it, for documents. I am informed that at Grand Junction, metadata is backed up within the database associated with the system in question, i.e., Windows 2000, Hummingbird Document/Records Management System and Plumtree Portal. These web server systems are fully backed up daily with a two-month tape rotation schedule. The cost of retention of daily backups indefinitely is contained in the $455,000 per year estimate above.**

**c. Computer and Network Activity Logs: Grand Junction's network logs are event logs. These logs are currently not backed up or retained because Grand Junction does not have a global network logging capability. Grand Junction relies instead on each system's event logs that are overwritten when they reach a certain size, e.g., 512 KB, depending on the system. For reasons unrelated to this case, I am informed that Grand Junction is preparing to implement a process whereby event logs are fully backed up and saved for security reasons. Due to the limited information on network logs related to the claims in this case, however, retention of such logs provides little to no additional effective data.**

**d. Web Pages: Grand Junction makes some of its historical material available to the public on its web page. This historical material is small in comparison to the other information concerning Grand Junction on its web site. Data on the Novell web server for Grand Junction's web site is backed up twice a week with differential**

backups in between. These tapes are reused every two months. The cost of a full daily backup of the Novell and Windows 2000 servers is contained in the $455,000 estimate above.

Since Grand Junction is preserving hard copies of the originals of its documents, does not back up secondary electronic copies from its web site for record retention purposes.

9. In regard to Office of Civilian Radioactive Waste Management (OCRWM) records, as noted in my Second Declaration, the search netted only twenty arguably relevant documents from the electronic database maintained by OCRWM. None of these documents are being retained on OCRWM's web page. Attachment 3 to my Second Declaration contained a list of arguably relevant documents, permanently retained, that DOE will provide if requested by Plaintiff or are otherwise available as public documents through the National Technical Information Service. No such request has been made. Below is a discussion of the current record retention policies in place at OCRWM:

a. Backup Data: I am informed that OCRWM currently performs daily incremental backups and retains quarterly full backups to support U.S. Nuclear Regulatory Commission licensing application requirements. This allows them to recycle their tapes for reuse approximately every 90 days. Given that OCRWM has only a handful of contemporary e-mails in its files that have minimal relevance to the claims in this case and these e-mails are being preserved permanently on a separate electronic database, OCRWM does not retain full daily backups tapes of these files. For OCRWM to retain daily full backup tapes of its e-mail, it would cost

**approximately $500,000 in additional costs per year.**

**b. <u>Metadata</u>: Metadata consists of information contained within a document, a web site, or if someone has entered it, for documents. I am informed that at OCRWM, metadata is backed up within the database associated with the system in question. However, OCRWM is currently keeping hard copies of the few relevant e-mails and those e-mails are being placed on a separate permanent database, electronic backups are not necessary. Since the documents themselves are being permanently retained, there would appear to be no real need for more frequent duplicative and costly backups. I am informed that to back up metadata and the computer logs described below would cost an additional $231,000 per year for OCRWM.**

**c. <u>Network and Computer Logs</u>: OCRWM's network logs are Windows event logs that are archived weekly and stored on a file server. These event logs consist of the System Event Log, Application Event Log, Security Event Log, Directory Service Log, DNS Server Event Log, and the File Replication Event Log. It should be noted that none of these logs could help in any litigation inquiries. The only event that could possibly be of interest might be a particular user's login/logout time on a specific day. Although the log would indicate login/logout time, it would not identify what user activity was performed or any information accessed.**

**d. <u>Web Pages</u>: OCRWM web pages do not contain any records that are arguably relevant to the issues in this case. Rather, OCRWM's web page contains information about Yucca Mountain and the Civilian Radioactive Waste Program. Web pages for OCRWM are backed up daily, Monday through Thursday, with a weekly backup on**

**Friday. Daily backups are retained for forty days and then the disks reused. Weekly backups are retained for 90 days before they are reused.**

**10. In sum, the number of arguably relevant documents held by DOE are few, largely historic in nature, and are being preserved in hard copy. For DOE to spend more than $1,189,000 for additional backup of e-mail, metadata, web page, and network log information would be duplicative and disproportionate compared to potential yields of any documents or data relevant to the matters at issue.**

**I hereby declare under a penalty of perjury that the foregoing information is true and correct to the best of my knowledge.**

L Dow Davis

**L. Dow Davis**

**Dated this 10th day of December, 2004**