IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JICARILLA APACHE NATION<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 02-25 L<br>Judge Francis M. Allegra |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION PURSUANT TO THE MARCH 19, 2004 RECORD RETENTION ORDER AND SUPPLEMENTAL STATUS REPORT

## INTRODUCTION

On April 8, 2005, Plaintiff filed its response to Defendant's Motion Pursuant to Section 6, as well as to Defendant's Supplemental Status Report. Plaintiff does not oppose Defendant's motion. Defendant hereby replies to Plaintiff's filing as follows:

A. Defendant's Motion Pursuant to Section 6

On March 18, 2005, Defendant filed its motion to modify paragraph 5(b) of the March 19, 2004, record retention order (RRO).[1/] By its motion, Defendant requests that the Court clarify

[1/] Defendant requests that ¶5(b) of the RRO and, specifically, the definition of "preservation" be modified to read as follows:

> "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things containing information reasonably anticipated to be subject to discovery if such actions would make that information

(continued...)

that the "incomplete or inaccessible" clause modifies all "preservation" actions identified versus exclusively the "negligent or intentional handling" language in the current RRO. Direction from the Court on the foregoing point would be useful in further specifying retention obligations. Plaintiff does not dispute this point. Indeed, Plaintiff's response to Defendant's motion states that Plaintiff "recognizes the ambiguity Defendant describes and is not opposed to clarification by Defendant's proposed modification to RRO ¶5(b)" (emphasis added). Plaintiff's Response to Defendants Motion (P.R.) April 8, 2005, at 2.[2] Based on the foregoing, as well as its original motion and memorandum, Defendant respectfully urges that the Court grant Defendant's Motion.

B. Defendant's Supplemental Status Report, March 18, 2005 (SSR)

Also on March 18, 2005, Defendant filed its Supplemental Status Report (SSR) that describes the steps taken by Defendant to continue its compliance with the RRO "particularly in the context of certain electronic media covered by the RRO including backup data, network and computer activity logs, metadata, web pages, and hard drives." SSR April 8, 2005, at 2.[3] The focus of the SSR filing was to inform Plaintiff and the Court of Defendant's compliance efforts regarding electronic media as identified in the RRO.

Plaintiff presented its position concerning the adequacy of Defendant's steps in its April 8,

---

[1](...continued)

incomplete or inaccessible. (Modification underlined).

[2] Plaintiff goes on to state that its "non-opposition" should not be viewed as reducing Defendant's obligation to preserve all documents, data and tangible things anticipated to be subject to discovery under RCFC 26(b)(1).

[3] In compliance with Section ¶ 4 of the RRO, Defendant had previously filed a status report of compliance actions on April 26, 2004 along with various agency declarations and other filings. Those are described in the SSR 2, n. 2.

2005 response to Defendant's Motion. While noting that it had continuing concerns about record preservation, Plaintiff concluded that "Defendant's Supplemental Status Report on compliance with its supporting exhibits offers some reassurance that Defendant has attempted to put preservation policies and procedures in place. Certainly the task is challenging and Plaintiff acknowledges the government's efforts to meet that challenge." P.R. 13.[4/]

Of the electronic media discussed in Defendants SSR, Plaintiff's April 8, 2005 Response primarily addresses backup tapes and hard drives along with other topics including relevancy, outsourcing to vendors, and gives footnote treatment to network activity logs. Plaintiff did not substantively address metadata and web pages. The following will address the primary concerns raised by Plaintiff including some preliminary matters and the electronic media issues it identified.

1. Preliminary Considerations

At page three of their P.R., Plaintiff raises as a concern that cost alone cannot be a justification for inadequate preservation. Plaintiff's observation oversimplifies the analysis required under the RRO and potentially underestimates the importance of cost in the analysis.

The Parties preservation steps are impacted in the first instance by the concepts of relevance and reasonableness. That is, the Parties are obligated to take "reasonable steps" to comply with the RRO. Indeed the term "reasonable" is repeated four times in the March 19, 2004 RRO. See e.g., Jicarilla RRO at ¶s 1 and 5(b). Consideration of the reasonableness of the steps necessary entails balancing the benefits and costs of the steps in question.

---

[4/] Plaintiff expressed some misplaced concern about the priority of record preservation relevant to this case in the overall mission of the Department of the Treasury. In fact, Treasury clearly stated in the SSR as follows: "Treasury stores tribal trust data in the same systems used for all data central to its mission....Safely preserving electronic data in these systems, including tribal trust data, *is an essential and integral part of Treasury's mission*." SSR at page 18 (emphasis added).

A review of the Declarations attached as Exhibits 2-7 and 9-13 to the SSR indicates that the various agencies considered a number of factors in deciding what constitutes reasonable steps in compliance with the RRO. These include: an assessment of the risk of losing significant data, the likelihood of finding new data or information, the availability of the same data in multiple forms (i.e., duplicate data), operational burdens created by the steps being contemplated, and cost. For example, certain Interior agency components determined that the additional costs associated with indefinitely retaining all backups would not be reasonable. They concluded it would be unreasonable to do so because that approach would not likely result in the preservation of any additional, nonduplicative, relevant data, and thus would not justify the burdens involved – operational and financial. For example, MMS concluded that "all data from the current and legacy systems are available on line in its data warehouse, therefore no additional utility is gained by retaining backup tapes in perpetuity." See SSR, Exhibit 3, Declaration of Robert E. Brown, March 11, 2005, ¶ 4.d. Similarly, BLM has concluded that replacing its existing disaster recovery backup schedules with additional tape archival strategies would not preserve any more data in its AFMSS [Automated Fluid Minerals Support System] or WIS [Well Information System] than is already being saved since the data entered into AFMSS and WIS and is retained indefinitely in each application's database. See SSR, Exhibit 4, Declaration of Scott E. MacPherson, March 3, 2005, ¶ 9.

Based on the foregoing it should be apparent that the central requirement of the RRO entered in this case is to take reasonable preservation steps, taking due consideration of relevant factors, such as cost, risk of missing relevant data, or availability of duplicative data.

Plaintiff also noted preliminary concern as to use of the term "relevance" in certain of the

declarations serving as exhibits to the SSR. (See P.R. 3). Plaintiff suggests that there is an opportunity for misinterpretation of the term if left to agency personnel. Plaintiff's fears are unfounded. Specifically, the multiple memoranda distributed by Deputy Secretary Griles used broad, descriptive and non-technical language to ensure complete understanding by all recipients of what items they are required to keep. See, e.g., SSR, Exhibit 1 September 24, 2004, E-mail Memorandum from Deputy Secretary J. Steven Griles to All Employees; SSR, Exhibit 7, March 26, 2002, Memorandum from Deputy Secretary J. Steven Griles to All Employees. In those memoranda, Mr. Griles described what was meant by "relevant information" by naming the types of items that must be retained and providing a list of examples. These notices were sent to all Interior employees nationwide, regardless of location or position. In addition, in his memorandum, dated September 24, 2004, Mr. Griles expressly notified employees that failure to comply with the court's Orders could lead to the imposition of sanctions against them. He further stated that "[s]upervisors must ensure that their employees and others who may handle relevant documents and data (including contractors) understand and comply with the preservation order, and will be held accountable, along with employees, for compliance." SSR, Exhibit 1, at 2. As such, the message to retain documents containing, or that might lead to, relevant information was clearly transmitted and thoroughly circulated.[5/]

In addition to the above notices and follow-up communications with its employees, Interior is in the process of considering follow-up presentations to various field offices outside of

---

[5/] At page 3 of the P.R., Plaintiff identifies as a final preliminary concern that if in doubt, personnel should be instructed to err on the side of preservation. In so doing, however, it notes that DOI (the Agency most likely to have the preponderance of relevant documents and data) has indeed already implemented those instructions. See DOI Departmental Manual, 303 DM 6, Appendices 1-6 in Defendant's April 26, 2004 Status Report.

Washington, D.C., to personally present Messrs. Griles', Jensen's and Tipton's messages regarding the Orders. See D.R., Exhibit 2. This follow-up step would allow Interior's Solicitor's Office personnel to reiterate to employees the requirements set forth by the Record Retention Order and give the latter a chance to speak to Interior representatives in person. As such, Defendant's have taken, and continue to take, numerous steps to ensure the nationwide distribution of the court's Orders, and thorough understanding by Interior personnel of their requirements and potential penalties for failing to comply with them.

2. Backup Data

Defendant's SSR and supporting declarations explain in great detail agency practices regarding retention of backup data. The SSR identifies the type of backups (i.e., full or incremental) as well as the duration of retention periods. SSR 9-11, 18-19. Plaintiff acknowledges that Defendant's policy is that all discoverable information should be stored on storage media that are backed up regularly. P.R. 6.[6/]

---

[6/] Plaintiff incorrectly notes as an exception to this general policy a comment in the March 11, 2005 Declaration of Robert Brown ¶ 7 that a very few [MMS users] store their files exclusively on their PC. See SSR, Exhibit 3. In point of fact, Mr. Brown, Associate Director for Administrative and Budget states in his declaration as follows:

> All MMS employees have been notified by the MMS Chief Information officer via e-mail that they are not to store data and documents relevant to the tribal resources and/or funds of the Pueblo of Laguna and/or Jicarilla Apache Nation on their local hard drive. They were additionally notified that they should contact their supervisors for additional retention measures if they have stored relevant information on their hard drives.

Brown's reference to the "very few" who store data exclusively on their PC, refers to employees who may violate the general polices and practices of MMS data storage. According to Brown these employees constitute a very small minority of MMS personnel. (SSR, Exhibit 3, Brown Declaration (continued...)

Under the Jicarilla and Laguna RROs, the duration of retention cycles is decided by each of the agencies based upon their analysis as to the data involved and what constitutes reasonable steps in preserving that data. As noted above, this analysis contemplates several factors ranging from the significance of the data category, whether the data is available in multiple formats or whether the data is unique, and the cost to the agency of the preservation steps being considered.[7/]

In this context, Plaintiff implies that six month retention cycles for BLM word processing documents may be too short if a BLM employee deletes "a spreadsheet analyzing tribal natural gas information." However, this hypothetical is not likely for several reasons. Specifically, the DOI employee would have received memoranda about the importance of record retention of tribal data in general as well as in the specific context of the Jicarilla and Laguna cases. (See SSR Exhibits 1, 2, 7, and 8). Included in the cited memoranda are precise descriptions of the type of information and data that are relevant and must, therefore, be preserved. In addition, the employee's supervisor, particularly one working with tribal data, is responsible for ensuring employee adherence to preservation policies. These precautions are designed to make a real-life occurrence of the hypothetical unlikely. In the face of the foregoing steps, implementing

---

[6/](...continued)
¶ 7).

[7/] The difference between this analytical approach and Plaintiff's consistent request for indefinitely-retained back-ups is apparent in its discussion of computer and network activity logs, one of the electronic media discussed in the SSR. See P.R. 8 n.5. These logs are computer system records containing technical information regarding the utilization of programs or applications running on a particular network. SSR p. 11. They are not data files in any substantive sense. Ibid. Plaintiff acknowledges that network activity logs are not likely to play a significant role in this litigation. P.R., 8 n. 5. Yet, it still suggests retention of these logs in permanently–preserved backups represents a "reasonable step." Ibid.

indefinitely-retained backup tapes to locate a single spreadsheet is not reasonable.[8]

3. "Outsourcing to Vendors"

Plaintiff also indicates a concern that third party vendors, such as SEI Investments, Inc., which owns and operates TFAS, have not been given the same retention directives as DOI employees, who received the Griles and Jensen/Tipton memoranda. Plaintiff's fears do not appear to be well-grounded. In paragraph 5.e, for example, of Robert McKenna's declaration, he explains that the TFAS system is populated by OST field personnel, who are the ones responsible for posting information regarding Tribal accounts to the system after having been reviewed and affirmed by headquarters. The OST personnel have been instructed per the Griles and Jensen/Tipton memoranda to retain all relevant documents and data pertaining to, or which could reasonably lead to relevant information, regarding this litigation. SEI is then responsible solely for backing up whatever is on the system, in its entirety. This it does, as noted in Mr. McKenna's declaration, on a daily, weekly, monthly and yearly basis. The daily and weekly back up tapes are retained for 21 days on a rolling and overlapping basis, whereas the monthly are kept for 16 ½ months, and the yearly backups are stored in perpetuity. SSR, McKenna Declaration, ¶ 5.a.

Furthermore, in a memorandum from Steven Griles to "All Employees," dated March 20, 2002, (SSR, Exhibit 7), he instructs third party vendors as follows: "If you are a Contracting Officer or a Contracting Officer's Technical Representative, you must notify contractors who are

---

[8] With respect to potentially deleted backup data, Plaintiff expresses some concern as to whether a backup of BIA's Land Record Information System (LRIS) will be maintained prior to conversion to the new Trust Asset and Accounting Management System (TAAMS). P.R. 10-11. Indeed, a backup of the entire LRIS system will be made prior to full conversion to TAAMS and retained indefinitely. Defendant will provide Plaintiff further confirming information in the parties' continuing discussions on the RRO and related topics.

in possession, custody, or control of Tribal Trust Documents that they must preserve Tribal Trust Documents." SSR, Exhibit 7. In September 2004, Mr. Griles again made reference to contractors' responsibilities by noting that they, like other Interior employees and their Interior supervisors, could be held liable for failure to comply with the Record Retention Order. SRR, Exhibit 1. Consequently, Plaintiff's concerns about third party vendors not being aware of their record retention responsibilities are not warranted.

Plaintiff also raises questions about the long-term reliability of ZANTAZ as a means of retaining e-mail messages. ZANTAZ is a contractor engaged by Interior as part of the Cobell litigation. Plaintiff is concerned there is "no assurance that the order in Cobell will stay in place and that the United States will continue retaining e-mails related to this tribal case if the Cobell order is lifted." P.R. 9. Whatever the disposition of the Cobell litigation or the ZANTAZ contract, Defendants have every intention of continuing to preserve electronic messages pursuant to this Court's orders. In the meantime, and for the foreseeable future, ZANTAZ will preserve potentially relevant e-mails, as explained in the SSR.

Conclusion

By its Supplemental Status Report Defendant has attempted to set forth in detail its RRO compliance activities particularly for electronic media. In its reply brief, Defendant has attempted to address Plaintiff's major concerns. Nevertheless, Defendant intends to continue discussions with Plaintiff regarding preservation of paper documents, data, and tangible things, in order to seek to address its concerns on an ongoing basis.

Respectfully submitted this 15th day of April, 2005.

KELLY A. JOHNSON
Acting Assistant Attorney General

*s/ Robert W. Rodrigues*

ROBERT W. RODRIGUES
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 353-8839
Fax: (202) 353-2120

Attorney for Defendant

OF COUNSEL:

BRENDA RIEL
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227