IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JICARILLA APACHE NATION, f.k.a. JICARILLA APACHE TRIBE, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-25L Judge Francis M. Allegra |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S NOTICE OF FILING OF UPDATE**
**CONCERNING INADVERTENT DOCUMENT DESTRUCTION**

Pursuant to Section 4 of the Record Retention Order dated March 19, 2004, Defendant United States hereby submits a report from the Office of the Chief Counsel, Financial Management Service, United States Department of the Treasury (Treasury), which provides updated information that Treasury has obtained, since July 9, 2007, about the inadvertent destruction of certain documents by a subcontractor of Treasury's agent, the Bank of America. See Defendant's Exhibit ("Def. Exh.") 1.

As detailed in the attached report, Treasury has learned, among other things, that the data from all 15 of the inadvertently destroyed boxes of government records were recorded in Treasury's CA$HLINK II system, so that it should be possible to recreate the data from CA$HLINK II; that the CA$HLINK II electronic data provided sufficient information to enable any depositing agency (e.g., the Department of the Interior) to retrieve its own paper copy of any deposit ticket or debit voucher that was in the inadvertently destroyed boxes; that the boxes contained materials relating to government-wide deposit ticket and debit voucher activity, so that not every record in the 15 boxes related to Indian trust-related transactions; that the Bank of America has recreated entirely the

deposit and debit voucher activity for 11 of the 15 inadvertently destroyed boxes and determined that more than 98 percent of the materials in those 11 boxes did not relate to Indian trust transactions; and that the Bank of America has acted promptly and implemented certain security measures so as to ensure a similar incident does not occur in the future. Id., ¶¶ 1-4, at 1-2.

Respectfully submitted this 24th day of September, 2007,

RONALD J. TENPAS
Acting Assistant Attorney General

s/Robert W. Rodrigues
ROBERT W. RODRIGUES
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 353-8839
Fax: (202) 353-2021
Email: robert.rodrigues@usdoj.gov

Attorney of Record for Defendant

OF COUNSEL:

LAURA MAROLDY
E. KENNETH STEGEBY
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 514-4565
Tel: (202) 616-8119
Fax: (202) 353-2021
E-mail: laura.maroldy@usdoj.gov
E-mail: kenneth.stegeby@usdoj.gov

TERESA E. DAWSON
Office of the Chief Counsel

Financial Management Service
United States Department of the Treasury
Washington, D.C. 20217

ELISABETH BRANDON
GLADYS ORR COJOCARI
TOM KEARNS
CANDACE N. BECK
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

Date: September 11, 2007

To: Anthony P. Hoang
Robert Rodrigues
Environmental and Natural Resources Division
United States Department of Justice

From: Teresa E. Dawson
Office of Chief Counsel
Financial Management Service
United States Department of the Treasury

Subject: Update Concerning Bank of America Incident Reported on July 9, 2007

This memorandum provides additional information that we have learned about the above-referenced incident since our initial memorandum of July 9, 2007.

1. We previously informed you that, in April 2007, an employee at Iron Mountain (a records storage company) mistakenly destroyed 24 boxes of documents being stored by Iron Mountain for Bank of America, a depositary bank and one of Treasury's financial agents. Some of these boxes contained government records and some contained Bank records. In particular, 14 boxes were identified as containing government records, and a 15th box was identified as containing "adjustment backup documentation" which could have been either government or Bank records. We have further reviewed the type of material that would have been in the box of "adjustment backup documentation" material, and have concluded that this material does comprise government records. However, contrary to our initial understanding, data from these materials would have also been captured in Treasury's CA$HLINK II system. Therefore, data from all 15 of the 15 inadvertently destroyed boxes of government records were recorded in, and should be able to be recreated from, CA$HLINK II. Paragraph 3 below provides further information concerning recreated data.

2. Bank of America acted promptly to ensure that a similar incident would not occur in the future. Specifically, an investigation into the cause of this incident revealed that an Iron Mountain employee was able to, and did, override the "Hold" placed on these Bank records in Iron Mountain's system. Iron Mountain's system has since been modified so that only one Iron Mountain employee – namely, Iron Mountain's account manager for the Bank of America account – has permission within Iron Mountain's system(s) to override any "Hold" condition placed on Bank of America records. Moreover, Iron Mountain issued a broadcast reminder to all employees with any responsibility for Bank of America records that these materials are subject to a "Hold" condition that may not be overridden.

3. Although it may not have been clear in our earlier memo, not every government record in these 15 boxes pertained to Indian trust-related transactions. Rather, the materials in these boxes encompassed government-wide deposit ticket and debit voucher activity. As explained previously, depositary banks enter data from all deposit tickers (SF 215s) and debit vouchers (SF 5515s) into the CA$HLINK II system.[1] Using data from CA$HLINK II, the Bank was able to reconstruct entirely the deposit and debit voucher activity for 11 of the 15 inadvertently destroyed boxes. This reconstruction revealed that more than 98% of the 119,838 items in those 11 boxes did ***not*** relate to Indian trust transactions. Only 1,444 items in the 11 boxes (less than 2% of the total) represented Bureau of Indian Affairs (BIA) transactions that might have been Indian trust-related, and those are likely to include a mixture of IIM, tribal trust, and non-trust items. Moreover, there is no indication that the percentage of non-trust items would be any different for the four boxes of deposit tickets and debit vouchers for which the data is more complicated to recreate (due to the transfer of deposit-related activity among different bank locations) and which therefore have not yet been analyzed.

4. Finally, the electronic data in CA$HLINK II provide sufficient information to enable any depositing agency to retrieve its own paper copy of any deposit ticket or debit voucher that was in the boxes inadvertently destroyed. Not only is there an "agency copy" in each of these multi-part forms, but, in accordance with Treasury instructions, depositary banks provide other copies of these items to depositing agencies at the time of the transactions.[2]

We believe it may be helpful to the courts now entertaining record retention orders to receive copies of this memorandum so that they are fully aware of the circumstances surrounding this incident. While regrettable, this incident did serve to demonstrate that the systems in place at Bank of America and Treasury allow us to identify such errors in a timely fashion, which was a concern expressed by Judge Allegra at the hearing concerning the record retention order to be issued in *Jicarilla*.[3] It also serves to

[1] The only piece of information on SF 215s and 5515s that is not recorded in CA$HLINK II is the contents of the "agency use" field. This field is an optional field agencies use at their discretion – some agencies use it, some do not. Even those who do may not use it on a consistent basis. Because it is not an element of data required for Treasury's processing of these records, it is not captured in CA$HLINK II.

[2] Volume V of the Treasury Financial Manual contains Treasury's instructions to its depositaries. Part 1, Chapter 2000 of Volume V instructs depositaries to distribute the multiple copies of the SF 215 "according to the instructions printed on each copy" and to deliver "the memorandum and confirmed copies of the SF 5515" to the depositing agency. *See* V TFM §§ 2040.10(c), 2040.20(a) (copies attached). As can be seen on the exemplars provided, the depositary is to return the "Confirmed Copy" of the SF 215 to the depositor, and to return the "Memorandum Copy" and the "Confirmed Copy" of the SF 5515 to the depositing agency. An "Agency Copy" is also provided in each form, which the depositor may "retain … for internal use." (Indeed, if the agency were not provided its own copy of the form, the "agency use" field would be of no use whatsoever.)

[3] As Judge Allegra stated, "So how does one then in the agency determine whether or not that [agency] order [freezing destruction of Indian records] is being complied with? … ***Would we know if something got destroyed*** … ?" Hearing on Plaintiff's Proposed Record Retention Order, *Jicarilla v. United States, Laguna v. United States*, February 13, 2004 (emphasis added). The need of the Financial Management

demonstrate that Bank of America and Treasury are committed to addressing any such errors promptly. Because human error is inevitable regardless of the number of safeguards in place, we do not believe that this incident provides any basis whatsoever to impose further restrictions on Treasury's ability to manage its burgeoning records population.

---

Service's Chief Counsel to know about any such incidents has been a point of emphasis at all training sessions given by FMS's Chief Counsel's office since the *Jicarilla* and *Laguna* orders were entered.