IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JICARILLA APACHE NATION,<br>f.k.a. JICARILLA APACHE TRIBE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 02-25L<br>Judge Francis M. Allegra |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to the Court's order of May 16, 2008, and Appendix A of the Rules of the Court of Federal Claims ("RCFC"), Plaintiff Jicarilla Apache Nation ("Jicarilla") and Defendant United States of America hereby submit this Joint Preliminary Status Report ("JPSR").

## I. INTRODUCTORY STATEMENT

### A. JICARILLA'S STATEMENT

This is an action by an Indian tribe asserting claims against the United States under the Tucker Act, 28 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505, for breach of fiduciary duty in administering the tribe's assets and funds. Jicarilla filed this case on January 8, 2002. On August 26, 2002, Jicarilla filed a First Amended Complaint. On September 11, 2002, the United States filed its Answer to the First Amended Complaint.

On December 13, 2002, proceedings in the case were stayed and, at the parties' request, the case was referred to Senior Judge Eric Bruggink to conduct an alternative dispute resolution ("ADR") process. The Court directed that the parties periodically file joint status reports regarding the progress of ADR and notify the Court if there was a need to restore this case to the

active docket.

The parties thereafter engaged in the ADR process for a number of years. By agreement of the parties, the ADR process was to be divided into phases. The first phase addressed fiscal claims relating to the United States' management of certain Jicarilla trust accounts during the period from July 1, 1972 through September 30, 1992 ("Andersen Period") and analyzed by Arthur Andersen LLP ("Andersen") under contract with the United States. Another phase of ADR was to address claims concerning proper lease enforcement, computation, and collection by the United States of amounts due under leases to produce oil and natural gas from Jicarilla's lands. Other asset management claims were to be addressed thereafter.

On February 12, 2008, counsel for Jicarilla transmitted to counsel for the United States and to Judge Bruggink a detailed submission on the legal bases for and analysis of Jicarilla's claims relating to disbursements made from tribal trust accounts during the Andersen Period. On March 19, 2008, counsel for Jicarilla transmitted to counsel for the United States and to Judge Bruggink a detailed submission on the legal bases for and analysis of Jicarilla's claims relating to the United States' investment of the trust funds during the Andersen Period. This submission also included a damages calculation based on the dollar balance that Jicarilla claims should have resulted if, as Jicarilla claims, the United States had properly invested the funds in Jicarilla's trust accounts, including funds that Jicarilla claims were improperly disbursed and that therefore should have remained in the trust accounts and been invested. Jicarilla's analysis in these submissions did not include the Tribal-Individual Indian Monies (Tribal-IIM) accounts, Indian Money Proceeds of Labor (IMPL) accounts, and Special Deposit Accounts (SDAs) because the relevant records regarding those accounts were not yet available to Jicarilla.

Given the magnitude of the alleged damages detailed in the March 19, 2008 submission

and the age of the case, Jicarilla concluded that the case needed to be restored to the active docket and to proceed toward trial with respect to the fiscal claims involved in the first phase of ADR. Accordingly, on May 13, 2008, Jicarilla moved to vacate the stay of proceedings.

As discussed in more detail below, Jicarilla seeks to divide this case into phases and to expedite the trial of the first phase, which would involve the claims detailed in the February 12 and March 19 submissions. This case has been pending more than six years. (The reasons for this delay are irrelevant for purposes of this status report and do not merit debate here, but Jicarilla disputes the Government's suggestion that the responsibility rests solely on Jicarilla). This litigation already has cost Jicarilla millions of dollars, diverting Jicarilla's resources from critically needed governmental and community development programs. Jicarilla sets forth below a proposed discovery plan which would get this case to trial in just over a year, in August or September 2009.

The Government, in contrast, proposes a dilatory discovery and briefing plan which would consume well over two years before trial. For example, the Government proposes to take more than six months to engage in "jurisdictional discovery" and to assert any jurisdictional defenses. Jicarilla submits that this is a waste of time. As discussed in section III.A below, the Court plainly has jurisdiction over the claims in the first phase and the only issue of substance – already well known to both parties – is whether a February 21, 1974 judgment in an Indian Claims Commission case bars Jicarilla's claims up until that date (*i.e.* the first 20 months of the 20+ year Andersen period).

**B. DEFENDANT'S INTRODUCTORY STATEMENT**

On January 8, 2002, and August 26, 2002, respectively, Plaintiff filed its Complaint and Amended Complaint in this case asserting claims against the United States under the Tucker Act,

18 U.S.C. § 1491 and the Indian Tucker Act, 28 U.S.C. § 1505. On September 11, 2002, Defendant timely filed its answer to Plaintiff's Amended Complaint. Following the Court's staying of the case on December 13, 2002, the Parties entered into an ADR Confidentiality Agreement and Protective Order approved by the Court on April 4, 2005, along with an Agreement Governing ADR Proceedings, on April 11, 2005. On February 12, 2008 and March 19, 2008, in the ADR proceeding, Plaintiff transmitted to Defendant disbursement and investment submissions setting out certain claims. The submissions included the caveat "ADR Privileged and Confidential. Not for Filing and Disclosure" throughout their text and covers. Use of the submissions (which may include privileged information provided by the Government in the course of the ADR) may require rulings by the Court given Plaintiff's potential violation of Appendix H, Section 3 as well as the April 4, 2005 ADR Confidentiality Agreement.

Plaintiff accurately states above the relevant dates for the historical background to this case. In the Spring of 2008, Plaintiff retained new counsel, Holland & Knight. Upon completion of the substitution, Holland & Knight requested that this Court remove the case from ADR, lift the stay, and place the case on an active litigation track. That motion was granted on June 16, 2008.

Since assuming responsibility for the case, Holland and Knight has repeatedly stressed the amount of time this case has been in ADR status. However, it should be noted that Plaintiff took three years to present Defendant with an ADR Agreement after the case had been stayed and a total of six years to develop its claims sufficient to present the Defendant with a settlement proposal.

In light of the extended time encompassed by the ADR proceeding with previous lead counsel, Defendant's position is that newly-substituted Plaintiff's counsel should first specify in

detail the current claims on which it wishes to proceed for purposes of trial. This will give the Defendant an opportunity to focus its litigation discovery, given the years of ADR activities, and ultimately serve the purpose of judicial economy and conservation of the parties' resources. Plaintiff should be required to further supplement its claims specification to the extent its claims are modified or increased in number in the course of fact or discovery. Following the period of fact discovery, Defendant would undertake its jurisdictional discovery in anticipation of a RCFC 12 motion and assert its jurisdictional defenses, if warranted, including, without limitation, the applicable statute of limitations, the failure to state money-mandating duties, res judicata, and the exclusive jurisdiction of the Indian Claims Commission under the Indian Claims Commission Act. The United States proposes to apply this approach to each phase of the case that Jicarilla proposes in this JPSR. Through the present date, Jicarilla opposes the governments proposal that the Tribe prepare any claim specification for purposes of this revived litigation.

To the extent that the Court has jurisdiction over any of Plaintiff's claims, the United States believes that dispositive motions practice and/or trial will be necessary to resolve those claims.

## II. PROPOSED DIVISION OF CASE INTO PHASES

Jicarilla's Position

Because of the size of this case – both in terms of the various claims asserted and the long time period over which those claims allegedly arose – the Jicarilla proposes that it be divided into phases. Phase I would address fiscal claims regarding disbursements from, and investment of, Jicarilla's trust funds by the United States. Subsequent phases would address Jicarilla's asset mismanagement claims, such as claims concerning proper lease enforcement, computation, and collection by the United States of amounts due under leases to produce oil and natural gas from

Jicarilla's lands, timber management, etc.

Jicarilla submits that Phase I of the case for trial should be the same as Phase I during ADR. Accordingly, Phase I would address Jicarilla's fiscal claims regarding disbursements from, and investment of, its trust funds by the United States during the period from July 1, 1972 to September 30, 1992 (the Andersen Period). A separate Phase II would address these same claims for the period from October 1, 1992 to date. An expert retained by Jicarilla has calculated the damages owed to Jicarilla for the Andersen period in the hundreds of millions of dollars. Jicarilla believes it is imperative to resolve the Andersen period claims as soon as possible.

The great majority of document discovery relating to the Andersen period claims should already be complete. During the ADR process, the Government produced approximately 700,000 pages of documents and Jicarilla produced more than 250,000 pages. The additional documents that still need to be produced should consist primarily of records relating to the Tribal IIM, IMPL, and SDA accounts. These were not the principal tribal accounts and the records relating to them should not be voluminous. The production of these records should not take a great deal of time or effort. The Government terms this assessment speculative and asserts that it is contradicted by the Government's experts, whom it describes as "the former Andersen staff with the greatest experience in locating such documents." There is nothing speculative about Jicarilla's assessment. It is based on the advice of Jicarilla's expert, who has been involved in this case from the outset and is involved in a number of other Indian breach of trust cases, and who has recently conferred with the Government's experts about the steps necessary to locate and produce these documents. An unrealistic discovery schedule would not benefit Jicarilla; the schedule proposed by Jicarilla is realistic and achievable.

Furthermore, Jicarilla already has provided the Government a detailed specification of the legal and factual bases for these claims in its submissions of February 12 and March 19, 2008. No further specification of claims should be necessary at this point in order for the Government

to prepare its defenses. Seeking to divert attention from this point, the Government makes the specious accusation that Jicarilla "potential[ly]" is violating RCFC Appendix H, Section 3 (d) and the April 4, 2005 ADR Confidentiality Agreement by making reference to the February 12 and March 19 submissions. This is nonsense. When asking this Court to establish a discovery schedule, the Government is not entitled to pretend ignorance of Jicarilla's claims and the evidence upon which Jicarilla relies after both have been disclosed to it.

Thus, the Andersen period claims should be able to be "teed up" and tried promptly. The Government's suggestion that a great deal of additional discovery needs to be performed is simply not credible. This matter has been pending for over six years and both parties have performed a considerable amount of work on it. Jicarilla, not the Government, should be the party pressing for more discovery -- it is the plaintiff and bears the burden of proof. The Government, in contrast, is the defendant and possesses virtually all of the documents relevant to assessing its performance of its duties as a trustee. The Government's contentions about the need for extensive additional discovery ring hollow.

Jicarilla believes that the resolution of the Phase I claims, whether through settlement or after trial, will facilitate a settlement of the Phase II claims because it will establish a template for valuing those claims. Thus, deferring the remainder of Jicarilla's fiscal claims at this juncture does not necessarily mean that the Court and the parties will have to conduct two trials rather than one in order to resolve all of the fiscal claims. To the contrary, Jicarilla believes that a trial of the Phase II claims probably will not be necessary.

After Jicarilla's fiscal claims are resolved, the parties would turn to the remaining claims which involve alleged mismanagement of Jicarilla's natural assets. Those claims may be divided into several phases. Depending on the prospects of settlement, those claims may or may not be placed on a trial track at that point.

<u>United States' Position:</u>

Even though the parties have informally exchanged many documents during the now terminated ADR, the parties have not served formal discovery, specified claims, nor have they obtained any documentation related to tribal Indian Money Accounts (IIM), Indian Money Proceeds of Labor account (IMPL), or Special Deposit Accounts (SDA). Plaintiff's suggestion that such records should not be voluminous is not based on any actual research into the IIM, IMPL, and SDA records, and lacks extensive on-the-ground experience. Furthermore, Defendant disputes Plaintiff's recitation of the phone conversation between Plaintiff's and Defendant's experts reported above. In fact, the experts did not address the specific amount of time which would be needed to perform the extensive and detailed background work needed to perform the IIM, SDA, and IMPL analysis. Further, Plaintiff's allegation that production of such records should not take a great deal of time or effort is speculation and is contradicted by the former Andersen staff with the greatest experience in locating such documents. Contrary to Plaintiff's representations, the research work, identification, and productions of related documents regarding the latter accounts are not simple tasks which can be quickly accomplished. Prior to 1985, there are few electronic documents and thus there is no alternative to hand-searching numerous boxes to find the relevant records and transaction histories.

In the present active litigation posture, there are several factors which should be considered in connection with any prospective discovery plan. These include:

1. The February 12 and March 19, 2007 submissions do not suffice for a claim specification in that they were prepared in the context of ADR, subject to the confidentiality requirements of Appendix H of the RCFC. The submissions carry the endorsement "ADR Privileged and Confidential. Not for filing or Disclosure." In addition, the submissions are identified as the work of the Nordhaus Law Firm, LLP including lead counsel, Alan Taradash, whose representation of the Jicarilla Tribe was terminated by the Jicarilla tribal counsel.

2. Given the number and complexity of the issues in the case, it continues to make sense to divide the litigation into monetary trust funds and non-monetary trust assets (*e.g.*, oil and gas), mirroring the actual claims plead in Plaintiff's complaint each with their own discovery periods and disposition schedule;

3. Given the number and types of claims presented by previous counsel, it makes sense for the newly-substituted counsel to produce a claims specification early in the discovery period to identify those issues on which substituted counsel wishes to proceed, the time periods involved, and those issues which Defendant's counsel should be in a position to defend and prosecute;

4. Given the informal nature of the ADR document exchanges, Plaintiff's representation that large volumes of documents have been exchanged does not mean that the collections provided thus far are complete. As noted above, at the termination of the ADR, few documents have been retrieved from the primary source of Native American records, the AIRR.

5. In a case such as the present one which has been in ADR for several years, it is essential to have plaintiff draft a detailed and comprehensive claim's specification in order to focus the issues for trial. In the absence of this focus Defendant will be at a substantial disadvantage in preparing an adequate defense.

Based on the foregoing factors, Defendant urges that discovery be conducted in the following manner for each asset type in an effort to specify the claims to be litigated between the Parties.

**A. <u>Staged Discovery</u>**

After Plaintiff has set forth its claims specification, the Parties may undertake factual discovery to ensure the integrity and comprehensiveness of the document exchange which has been carried on informally for purposes of ADR. Plaintiff should be under an obligation to

supplement its claims specification to the extent that its claims are modified or increased in the course of factual or expert discovery. In addition, Defendant would undertake any other discovery related to Plaintiff's claim specification as originally served at the commencement of discovery or as supplemented.

As counsel for the parties understand, relevant evidence, or that which may lead to relevant evidence, is located at multiple locations in this case, including record repositories around the country. In order for Defendant to respond to Plaintiff's discovery requests, the Parties may undertake the following process to improve efficiencies:

1. The Parties would cooperatively identify boxes that may contain responsive document using the Box Inventory Search System (BISS); which was not extensively undertaken by the Parties in the ADR.
2. The Solicitor's Office of the Interior Department would conduct pre-inspection privilege review of the newly-identified boxes;
3. Plaintiff's counsel would inspect the boxes and designate those documents it wishes to have produced; and
4. Presumably, Plaintiff would cooperate in the same way with the Government as it undertakes its own discovery.

During the next stage of discovery, Defendant would undertake discovery of any jurisdictional issues based on discovery obtained in the initial discovery stage including Plaintiff's claims specification. This stage would be limited to Defendant's fact discovery required for any jurisdictional challenges, including whether Plaintiff's claims accrued more than six years prior to the filing of the litigation, res judicata, etc. Defendant suggests that while predicting the duration of a jurisdictional discovery period is difficult in the absence of an actual claims specification, this second stage of discovery is likely to require 120 days. Within an additional 60 days following conclusion of jurisdictional discovery, Defendant would file its

jurisdictional motion(s).

Once the Court resolves the jurisdictional issues, and assuming Defendant's motion is not completely successful, the Parties would confer about the final stage of discovery in which any remaining factual discovery, including remaining fact depositions, is completed. In addition, the Parties would conduct expert witness discovery and otherwise prepare the case for trial.

**III. <u>PARTIES' REPORT PURSUANT TO RCFC APPENDIX A</u>**

On June 23, 2008, the parties participated in a formal teleconference that involved the attorneys of record and other attorneys "knowledgeable about the case, the identity of witnesses, and the location of documents." RCFC, App. A, Part II.3. The following attorneys attended the teleconference:

1. Counsel of Record for Jicarilla: Steven D. Gordon
2. Counsel of Record for the United States: Robert W. Rodrigues
3. Other Counsel for Jicarilla: Stephen J. McHugh
4. Other Counsel for the United States: E. Kenneth Stegeby, Ayako Sato, United States Department of Justice; Gladys Cojocari, Holly H. Clement, and Dondrae Maiden Office of the Solicitor, United States Department of Interior.

Counsel for the parties discussed their positions on the several items set forth in RCFC Appendix A.

**A. Does the Court have jurisdiction over the action?**

<u>Jicarilla's Position</u>:

The Court has jurisdiction over this action. Jicarilla does not agree with the Government that an additional specification of its claims, beyond the lengthy and detailed submissions made on February 12, and March 19, 2008, is necessary or warranted in this case. The claims asserted in Phase I plainly are not barred by the statute of limitations nor is there any question that they are based on money-mandating duties. They are the very sort of claims that the Federal Circuit

approved in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1351 (Fed. Cir. 2004): "claims that allege the Government mismanaged funds after they were collected."

Counsel for Jicarilla has acknowledged to Government counsel that the stipulated judgment in Jicarilla's case before the Indian Claims Commission, Docket No. 22-K, on February 21, 1974, may well bar Jicarilla from asserting certain claims that accrued theretofore. But this simply demonstrates that the jurisdictional issues in this matter already are well known to both parties and can be promptly resolved without any need for a special discovery and briefing period.

United States' Position:

The claims that Jicarilla raises in this case suffer from several possible jurisdictional deficiencies that may potentially: (1) result in dismissal of the Complaint at least in part; or (2) dispose or limit the scope of certain claims. The statute of limitations, 28 U.S.C. § 2501, may bar some of Jicarilla's claims. The Court may also lack jurisdiction over those claims for which Plaintiff is unable to identify a substantive source of law – such as a statute, treaty or regulation that establishes a specific fiduciary money mandating duty or that fall within the exclusive jurisdiction of the Indian Claims Commission. In addition, depending on Jicarilla's detailed specification of its claims, the United States may raise defenses of claim and/or issue preclusion. Before the United States can determine which, if any, of Plaintiff's claims are time barred, lack jurisdictional basis, or implicate preclusion doctrines, however, Jicarilla must provide at the beginning of the discovery period a detailed specification of its claims, as well as the factual and legal basis thereof. Once Jicarilla has made the requisite detailed claim specification, factual discovery can commence to be followed by jurisdictional discovery as noted above.

**B. Should the case be consolidated with any other case and, if so, why?**

At this time, the parties do not believe this case should be consolidated with any other case.

**C. Should the trial of liability and damages be bifurcated, and if so, why?**

Jicarilla's Position:

Jicarilla does not believe that trial of liability and damages for each phase should be bifurcated. Unlike the Government, Jicarilla sees no risk that trying both issues together will confuse the Court or undermine the accurate resolution of the issues. To the contrary, it is pointless to separate the issues of liability and damages.

For example, with regard to Jicarilla's claim regarding allegedly improper disbursements from tribal trust accounts, there is no question that the Government would be liable if it made such improper disbursement. The only real issue will be whether, and to what extent, the Government failed to do so. Proof of damages will be inextricably intertwined with proof of liability. The same is true of Jicarilla's claims regarding alleged deficiencies in the management and investment of tribal funds. Adjudication of these claims may involve deciding certain predicate issues such as the permissible "lag time" between collection of funds and their deposit into a tribal trust account, or determining whether the Government should have "pooled" Jicarilla's trust funds when investing them – as it pooled Individual Indian Money and other trust funds -- in order to obtain a maximum return. But resolution of these issues does not require a separate trial on liability. Jicarilla submits that, far from promoting an expeditious and efficient resolution of its claims, bifurcation of the trial of liability and damages is simply a recipe for further delay.

The claims at issue here are similar to some of the claims addressed in Osage Tribe of Indians v. United States, 72 Fed.Cl. 629 (2006). In that case, Judge Hewitt conducted a trial and then issued a decision resolving various liability issues. She then gave the parties a period of approximately six weeks to jointly calculate and present to the court the amount of damages to which plaintiff was entitled in accordance with her opinion. Id. at 671. This approach may make

sense here.

United States' Position:

Defendant believes that trial of liability and damages should be bifurcated. Each phase of this case will present significant and complex questions of fact and law and will involve the review of a voluminous documentary record. Combining the trial of liability and damages poses the significant risk that facts and legal arguments relevant to only one matter will be conflated with, and ultimately undermine, the accurate and proper resolution of the other.

Further, the issues of liability and damages in this case are not inherently related or legally dispositive of each other. It is possible that the Court could hold the United States liable for mismanagement of trust funds, and then determine that this management did not cause any damages. Conversely, it is possible that the Court could make a finding that, although Jicarilla has suffered losses, those losses are not the result of any actions for which the United States can be held liable. Because it is only necessary for the Court to reach the issue of damages if the United States is found to be liable for a breach of trust, judicial efficiency counsels that the Court and the parties preserve their limited resources with respect to taking discovery, briefing, and preparing for trial on any damages claims until after it becomes clear that the parties and the Court need to address the matter.

**D. Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

At this point the parties do not believe that further proceedings in this case should be deferred pending consideration of another case before this Court or any other tribunal.

**E. In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

At this point the parties do not believe that a remand or suspension will be sought.

**F. Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

At this time the parties do not anticipate the joinder of any additional party.

**G. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), 12(h) or 56, and, if so, what is the schedule for the intended filing?**

Jicarilla's Position:

Because the Government has already filed an Answer to the First Amended Complaint, Jicarilla perceives no basis for the filing of a motion pursuant to RCFC 12(b). With respect to Phase I, Jicarilla anticipates that one or both parties may file motions for partial summary judgment. Jicarilla believes that the parties should postpone the filing of any motions concerning subsequent phases of the litigation.

Jicarilla opposes the Government's request that Jicarilla should now be compelled to file a detailed statement of its claims and damages in Phase I, following which the Government would have 120 days to engage in jurisdictional discovery and an additional 60 days in which it could decide to file a motion challenging jurisdiction. Jicarilla already has outlined its Phase I claims in great detail in its submissions of February 12 and March 19, 2008, which are more than sufficient to enable the Government to formulate any jurisdictional challenge it may care to raise. Additional pleadings and special jurisdictional discovery are completely unnecessary. They are merely a pretext for delay.

United States' Position:

The United States contemplates raising jurisdictional defenses through dispositive motions practice pursuant to RCFC 12 (b), 12 (c), 12(h) or RCFC 56 during each phase of the case. Given the broad nature of Jicarilla's claims, before the United States can seek dismissal or summary disposition of some or all the claims, the Court should compel Jicarilla to file a detailed statement of its claims early in Phase I, including: (1) specification of the particular rights-creating or duty-imposing sources of law underlying the claims; (2) the precise breach(es) of

those duties that Jicarilla alleges; (3) a concise statement of the alleged operative facts constituting the asserted breach(es) of duty; and (4) the alleged damages resulting from such alleged breach(es). After Jicarilla has specified its claims, the Court should authorize the United States to engage in discovery for 120 days to determine the basis, if any, for this Court's subject matter jurisdiction over the specified claims. Sixty days after completion of this discovery, the United States would raise its jurisdictional defenses by way of RCFC 12(b) or 56 motion, if it concludes that doing so would be appropriate.

In the event the Court allows Jicarilla to delay the filing of a detailed specification of claims until after Jicarilla has promulgated its expert report(s) or to supplement its detailed specification of claims after Jicarilla's promulgation of its expert report(s), the Court should extend, by a commensurate amount of time: (1) the period for the United States to take discovery to determine the basis, if any, for the Court's subject matter jurisdiction over the specified claims; and (2) the period for the United States to file any jurisdictional motion and respond to Plaintiff's expert reports.

**H. What are the relevant factual and legal issues?**

Jicarilla's Position:

Jicarilla considers the following to be the relevant factual issues for Phase I of this case:

1. Whether and, if so, to what extent the Government failed to manage revenues it collected and held for Jicarilla's benefit appropriately, such as making unauthorized or invalid disbursements of Jicarilla's funds; taking too long to deposit funds into Jicarilla's accounts; and deducting funds prematurely from Jicarilla's accounts, e.g., when checks were written rather than when they cleared.

2. Whether and, if so, to what extent the Government failed to invest Jicarilla's funds appropriately so as to maximize income.

3. What damages, if any, Jicarilla suffered as a result of the Government's alleged

breaches of fiduciary duty.

Jicarilla believes that the relevant legal issues concern the nature and extent of the Government's fiduciary duties with respect to collecting, managing, and investing funds for Jicarilla, and computing damages for any breach(es) of such duties.

Jicarilla proposes that the parties address the factual and legal issues relevant to subsequent phases at a later time.

United States' Position:

In the United States' view, it is presently premature to identify the factual and legal issues (including those for Phase I) that this Court may have to address at trial on liability or damages because the precise contours of those issues depend on the Plaintiffs' specification of claims, and the jurisdictional rulings that the United States plans to request from the Court. Nonetheless, the United States sets forth some factual and legal issues that are or may be relevant to the Court's jurisdiction over Jicarilla's claims in this case, including Phase I. This listing is not intended to be a complete or comprehensive identification of issues and is subject to revision, depending upon certain events, including but not limited to such items as the discovery process and Plaintiff's specification of claims.

1. Whether the statute of limitations, 28 U.S.C. § 2501, bars some or all of Jicarilla's claims.

> a. Whether Jicarilla's claims fall within the language of the Interior Appropriations Act ("IAA"), as the United States Court of Appeals for the Federal Circuit construed that language in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004). The IAA provides, in relevant part, that a Tribe's claims related to loss or mismanagement of its trust funds shall not begin to accrue until the United States Department of the Interior has provided an accounting from which the Tribe can determine its losses. See Pub. L. No.

108-447, 118 Stat. 2809; and

b. Whether Jicarilla's claims accrued more than six years before the filing of this case.

2. Whether the Court has jurisdiction over Jicarilla's claims under the Tucker Act or the Indian Tucker Act, 28 U.S. C. §§ 1491(a)(1) and 1505.

a. Whether Jicarilla's claims are based on substantive sources of law, such as a statute, treaty, or regulation that establish specific fiduciary or other duties;

b. To the extent that Jicarilla's claims are based on specific duties established in substantive sources of law, whether a breach of those duties would mandate the payment of compensation;

c. Whether Jicarilla has sufficiently alleged that the United States has failed to perform any specific money-mandating duties; and

d. Whether Jicarilla's claims were within the exclusive jurisdiction of the Indian Claims Commission.

3. Whether the doctrines of claim and/or issue preclusion apply to bar any or all of Jicarilla's claims.

4. Whether the Complaint fails to state a claim because the alleged duty that Plaintiff alleges was breached does not exist in any applicable statute, regulation or other applicable law.

5. Whether any Jicarilla claims are barred by failure to pursue administrative remedies.

**I. What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

<u>Jicarilla's Position</u>:

Jicarilla believes that a settlement of the Phase I claims may be achieved eventually, but there is no realistic possibility of doing so until after a firm trial date has been set and the Court has ruled on, or at least addressed in preliminary fashion, various issues bearing on the extent of the Government's duty to invest tribal trust funds. Jicarilla does not contemplate any further

ADR with respect to Phase I but remains open to the possible use of ADR with respect to subsequent phases.

United States' Position:

The United States entered into an ADR Agreement with the Jicarilla on April 11, 2005. Upon delivery by the Jicarilla of its settlement proposal and damage calculations in February and March of 2008, the Jicarilla withdrew from ADR on May 13, 2008. The Jicarilla's termination letter stated that the case could not be settled "divorced from ongoing pretrial process."

The United States disagrees with that assessment and remains willing to consider settlement discussions while the parties are not distracted by litigation issues which would disturb the focus necessary for the parties to engage in serious talks.

**J. Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?**

Jicarilla's Position:

Jicarilla anticipates proceeding to trial on its Phase I claims in the event that a settlement is not reached. Jicarilla does not request an expedited trial schedule under the criteria set forth in RCFC Appendix A, ¶ 4.(j). As discussed above, however, it does seek to expedite the trial of Phase I to the extent reasonably possible. For that reason, it opposes the Government's suggestion that the setting of a trial date should be deferred. This is a recipe for needless delay.

United States' Position:

The dispositive motions practice described by Defendant in various sections of this report, including Sections "A" and "G," may dispose of some or all of Plaintiff's claims presented in the Jicarilla litigation.

Should the case proceed to trial, the complexity and volume of the substantive issues make it unlikely that an expedited trial will be possible. In the interest of judicial economy and conservation of resources, Defendant respectfully suggests that any trial setting should be deferred pending a ruling by the Court on any jurisdictional or dispositive motions.

**K. Are there special issues regarding electronic case management needs?**

The parties do not foresee any special issues regarding electronic case management needs.

**L. Is there other information of which the court should be aware at this time?**

The parties are not aware of any additional information which the Court should be aware of at this time.

**M. Proposed Discovery Plan**

Jicarilla's Position:

Jicarilla proposes the following discovery plan for Phase I:

- Document discovery to be completed by October 31, 2008.
- Depositions of fact witnesses to be completed by January 16, 2009.
- The Parties to exchange initial reports of their respective experts on February 6, 2009.
- Depositions of expert witnesses to be completed by March 20, 2009.
- The Parties to exchange rebuttal and any updated expert reports by April 10, 2009.
- Depositions of expert witnesses regarding rebuttal or updated reports to be completed by May 8, 2009.
- Trial in August or September 2009.

Jicarilla notes that its proposed schedule would lead to a trial of the Phase I claims, absent a settlement, in just over one year. In sharp contrast, the Government proposes a schedule that would require at least twice as long. The Government's proposed schedule is dilatory and unacceptable, especially when (1) Jicarilla is pursuing claims against its trustee seeking recompense for longstanding breaches of fiduciary duty, (2) this action has been pending for over six years, and (3) this action is being adjudicated under rules of procedure that are to be

construed and administered "to secure the just, speedy, and inexpensive determination of every action." RCFC 1. The Government's contention that it needs to engage in substantial formal discovery is not credible given the nature of the claim – breach of trust – and the fact that it, as the trustee, has access to virtually all of the relevant evidence.

Jicarilla submits that the jurisdictional discovery period proposed by the Government is completely unnecessary and that the timeframes for the other discovery proposed by the Government are excessive. Furthermore, the parties can and should be expected to pursue discovery and develop their respective cases simultaneously, including expert testimony. This approach is eminently fair. It is routinely used in litigation between private parties and has been used successfully in other Indian breach of trust litigation before this Court. Moreover, the detailed submissions of February 12, and March 19, 2008, that Jicarilla already has provided to the Government, summarize most of the analysis that has been performed by Jicarilla's experts. In sum, this is not a case where the parties are starting from scratch. It is, rather, a case in which years already have been spent in discovery and analysis of the issues. The discovery schedule should be set accordingly.

Jicarilla is not proposing a discovery schedule for the subsequent phases at this time. Pending the resolution of Phase I, the Parties may conduct informal discovery with respect to these other phases.

United States' Position:

The discovery schedule proposed by the Defendant is fair and equitable given the number and complexity of the issues presented in the case. Defendant's schedule is based in part on the absence of any formal discovery in the ADR context. There has been no traditional paper discovery propounded including interrogatories , requests for admission, etc. in this case. One

deposition has been taken by the Government in the interest of preserving the testimony of an aged BIA manager.

Based on the foregoing, there remains substantial discovery to be taken given the critical nature of the issues and events occurring during the initial period for trial, 1972 to 1992. Completion of comprehensive discovery during this Andersen period will ultimately advance the speed of litigation with regard to the other chronological stages involved. Thus, the United States proposes the following discovery and briefing plan for the first phase of the litigation:

1. Plaintiff's specification of claims identified at the beginning of fact discovery and supplemented as claims are modified or increased.
2. Completion of document discovery including confirmation of the status of any ADR documents exchanged, formal discovery for purposes of this case including claims related to Tribal Indian Money Accounts, Indian Proceeds of Labor and Special Deposit Accounts and Plaintiff's claims specification, all to be completed by February 9, 2009.
3. Completion of jurisdictional discovery by June 9, 2009 and briefing by August 16, 2009.
4. Completion of depositions of fact witnesses by November 20, 2009.
5. Delivery of Plaintiff's expert reports by February 26, 2010.
6. Delivery of Defendant's expert reports by May 31, 2010.
7. Completion of expert depositions by August 20, 2010.
8. Pretrial conference, and dispositive motion(s) by the Parties scheduled by September 20, 2010.

Respectfully submitted this 25th day of June, 2008,

s/ Steven D. Gordon
STEVEN D. GORDON
Holland & Knight, LLP
2099 Pennsylvania Avenue, NW
Suite 100
Washington, DC 20006
Telephone: 202-955-3000
Fax: 202-955-5564

Attorney of Record for Plaintiff

s/ Robert W. Rodrigues
ROBERT W. RODRIGUES
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: 202-305-0484
Fax: 202-353-2021

Attorney of Record for Defendant

OF COUNSEL:

LYNN E. CALKINS
STEPHEN J. MCHUGH
Holland & Knight L.L.P.
2099 Pennsylvania Ave. NW, Suite 100
Washington, D.C. 20006

OF COUNSEL:

E. KENNETH STEGEBY
AYAKO SATO
United States Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20044-0663

GLADYS COJOCARI
HOLLY H. CLEMENT
DONDRAE MAIDEN
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, DC 20227