# In The United States Court of Federal Claims

No. 02-25L

(Filed: February 1, 2010)
_____

| | |
|---|---|
| JICARILLA APACHE NATION, formerly JICARILLA APACHE TRIBE, <br><br>                Plaintiff, <br><br>v. <br><br>THE UNITED STATES, <br><br>                Defendant. | * <br> *   Tribal trust case; Motion for stay pending <br> *   further appellate review of Federal Circuit's <br> *   denial of mandamus petition; Fiduciary <br> *   exception to the attorney-client privilege; <br> *   Weak showing of likelihood of success; <br> *   Alleged irreparable harm not demonstrated; <br> *   Damage to plaintiff based on further delay; <br> *   Public interest; Motion denied; Production <br> *   deadline extended to allow for filing of <br> *   petition for rehearing. <br> * |

_____

**ORDER**
_____

    *Steven D. Gordon*, Holland & Knight, Washington, D.C., for plaintiff.

    *Barbara M.R. Marvin*, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Ignacia S. Moreno,* for defendant.

    *Alan R. Taradash* and *Daniel I.S.J. Rey-Bear*, the Nordhaus Law Firm, Albuquerque, New Mexico, for Pueblo of Laguna and Navajo Nation, *amici*.

**ALLEGRA, Judge:**

    Following the recent denial of its petition for mandamus by the Federal Circuit, the United States has moved to stay the production of certain documents in this tribal trust case to allow it potentially to pursue further appellate review of its claim that those documents are protected by privilege.

I.

The complaint in this case was filed on January 8, 2002. Thereafter, the parties engaged in an earnest effort to settle this case, via alternative dispute resolution. After a settlement did not materialize, in July of 2008, the case was restored to the active docket and an order was issued establishing a schedule that envisioned the completion of all discovery by July 30, 2009. In the midst of that discovery, the document dispute that is the genesis of this matter erupted.

On July 2, 2009, this court granted, in part, a motion filed by Jicarilla Apache Nation (plaintiff) seeking to compel the discovery of certain documents. *Jicarilla Apache Nation v. United States*, 88 Fed. Cl. 1 (2009). The court held, *inter alia*, that certain communications between agencies of the United States and their attorneys regarding Indian trust matters were subject to a fiduciary exception to the attorney-client privilege. *Id*. at 11-12. At the end of that opinion, the court ordered defendant to produce, by July 13, 2009, a series of listed documents. *Id*. at 21.[1] Following an extension of that production deadline to August 10, 2009, on July 31, 2009, defendant filed a petition for a writ of mandamus in the Federal Circuit, seeking to vacate this court's order to the extent it required the production of documents on which the United States continued to claim the attorney-client privilege.

On August 4, 2009, the Federal Circuit issued an order temporarily staying this court's production order, pending consideration of defendant's petition for mandamus. On December 30, 2009, the Federal Circuit denied defendant's petition for a writ of mandamus, upholding this court's application of the fiduciary exception to the documents at issue. *In re United States*, 2009 WL 5125518 (Fed. Cir. Dec. 30, 2009). At the end of its opinion, the Federal Circuit lifted the temporary stay of this court's production order. *Id*. at *11.

On January 4, 2010, this court ordered defendant to produce the aforementioned documents by January 13, 2010. On January 8, 2010, defendant filed a motion to stay the court's production order "until the expiration of Defendant's time to exercise any and all appellate remedies." Defendant acknowledged that the requested stay could be extensive – long enough not only to allow it potentially to file a petition for rehearing and/or a petition for certiorari, but for the respective courts to act on those petitions. It suggested, however, that the stay need not delay discovery in this matter, which, it contended, could proceed pending further appellate review of the production order. The same day this motion was received, the court issued an order extending the production deadline until February 1, 2010, and directing both parties to submit further filings regarding defendant's motion. Pursuant to that order, on January 19, 2010, defendant filed a memorandum describing its views as to whether the production of the documents in question to plaintiff would waive any attorney-client privilege with respect thereto as to third parties. On January 25, 2010, and January 26, 2010, plaintiff and the *amici*,

---

[1] The documents in question were listed in part V.1(a) of the July 2 order and, at times thereafter, have been referred to as the "part V.1(a) documents."

respectively, filed their oppositions to defendant's motion to stay. On January 28, 2010, the court extended the production deadline to February 5, 2010.

II.

In essence, defendant's motion seeks an extended stay of this court's production order pending further appellate review. In determining whether to issue a stay, pending appeal, this court must "assess[] the movant's chances for success on [the merits] and weigh[] the equities as they affect the parties and the public." *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987); *see also Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 513 (Fed. Cir. 1990). Providing further guidance in this regard, the Supreme Court recently noted that such stay motions ordinarily are reviewed using four criteria – "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 129 S. Ct. 1749, 1756 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)); *see also E.I. DuPont de Nemours*, 835 F.2d at 278; *John R. Sand & Gravel Co. v. United States*, 60 Fed. Cl. 347, 349 (2004). Obtaining such a stay "'is not a matter of right, even if irreparable injury might otherwise result.'" *Nken*, 129 S. Ct. at 1757 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). The party requesting the stay bears the burden of showing that the circumstances warrant such an order. *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Based upon its review of these factors, the court concludes that defendant has not met this burden.

First, defendant has made neither a strong showing that it is likely to obtain further review, nor much of any showing that it will prevail should such review be granted. Turning to the latter point first – in denying defendant's petition for mandamus, the Federal Circuit first observed that the fiduciary exception to the attorney-client privilege is well-established and has been recognized by multiple circuits in a variety of circumstances. *In re United States*, 2009 WL 5125518, at *5-6. It then rejected defendant's banner claim, *to wit*, that, in tribal trust matters, "the fiduciary exception does not apply to it because its relationship to the tribe is different than a traditional fiduciary relationship." *Id*. at *3, 6. In so concluding, the Federal Circuit noted that three other decisions – two in this court and one in the D.C. district court – had also rejected this claim. *Id*. at *6 (citing *Osage Nation v. United States*, 66 Fed. Cl. 244, 247-53 (2005); *Cobell v. Norton*, 212 F.R.D. 24, 27-29 (D.D.C. 2002); *Shoshone Indian Tribe of Wind River Reservation, Wy. v. United States*, Nos. 458-79 and 459-79 (Fed. Cl. May 16, 2002)). Culminating its extensive analysis of this issue, the Federal Circuit held "that the United States cannot deny an Indian tribe's request to discover communications between the United States and its attorneys based on the attorney-client privilege when those communications concern management of an Indian trust and the United States has not claimed that the government or its attorneys considered a specific competing interest in those communications." *In re United States*, 2009 WL 5125518, at *6.

Defendant has not pointed to a single decision – either before this court or the Federal Circuit – adopting its position that, in a case alleging the breach of fiduciary duties, it may shield from production evidence bearing on why it made the decisions that are being challenged. Nor has it cited a single case taking its view that its relationship to the tribes somehow brings it outside the well-recognized fiduciary exception. And there is good reason for defendant's silence on these counts – as there are no such cases. Moreover, as discussed by the Federal Circuit, the traditional rationales for the fiduciary exception – which have their roots in British common law – fit the circumstances of this case like a glove. *Id*. at *6-7.

Beyond this, in seeking a further stay, defendant fails to come to grips with the unique procedural posture of this case. For one thing, this matter still involves a mandamus petition. Thus, for defendant to be successful in its attempt at further review, it must not only convince the Federal Circuit, sitting *en banc*, or the Supreme Court that its basic position is correct, but must do so in a fashion demonstrating its "clear and indisputable" right to a mandamus. *See Hollingsworth v. Perry*, 130 S. Ct. 705, 710 (2010); *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). Defendant is not seeking a stay pending an appeal as of right, but rather pending the potential pursuit of **discretionary** review of an adverse appellate decision. In assessing this type of stay, the court cannot ignore that an *en banc* hearing or rehearing "is not favored and ordinarily will not be ordered" unless needed "to secure or maintain uniformity of the court's decisions" or to review a "question of exceptional importance." Fed. R. App. P. 35(a); *see also* Fed. Cir. R. 35; *see Hoop v. Andrews*, 2009 WL 2431285, at *1-2 (S.D. Ohio Aug. 6, 2009). Yet, there is no disuniformity in the law here – certainly nothing directly contrary to the Federal Circuit's opinion. And, while defendant has, in this court and the Federal Circuit, repeatedly emphasized the importance of the question at issue, discovery in this case is incomplete, leaving unresolved, for now, just how important production of the documents in question is to the ultimate resolution of this case (let alone any other case). Accordingly, in the court's view, there is, at best, a little flicker of hope that defendant will obtain further interlocutory review from the Federal Circuit of this court's production order.

Absent an intercircuit conflict on the question at issue – of which there is none – it is even less likely that the Supreme Court would grant certiorari as to the interlocutory ruling at issue. *See* Sup. Ct. R. 10.[2] This is particularly so in light of a recent opinion by the Court

---

[2] Reflecting the difficulties inherent in obtaining a writ of certiorari, the Supreme Court, only days ago, explained what is required to obtain a stay pending the disposition of a petition for certiorari –

> To obtain a stay pending the filing and disposition of a petition for a writ of certiorari, an applicant must show (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of the stay.

indicating a reticence to review privilege issues on an interlocutory basis. *See Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 606 (2009).[3]

Second, there is significant doubt as to whether defendant will be irreparably injured by production of the documents in question. The court ordered defendant to file a memorandum expressing its view as to whether production of the documents in question, under court order, would waive the attorney-client privilege as to third parties. It did so because defendant's prior filings appeared to waffle on this point. In that memorandum, defendant continued to assert that the law in this area is somewhat "unsettled," but ultimately posited that court-ordered production would not waive the privilege as to third parties. Yet, it appears that defendant's memorandum may suffer from a dose of artificial modesty – for, as it turns out, the decisional law is not particularly unsettled and appears overwhelmingly to support defendant's position.[4] Further, as the *amici* point out, the Federal Rules of Evidence were recently amended to provide that "[a] Federal court may order that the [attorney-client] privilege . . . is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not

---

*Hollingsworth*, 130 S. Ct. at 709-10; *see also Lucas v. Townsend*, 486 U.S. 1301, 1304 (1988) (Kennedy, J., in chambers); *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers). While the court does not mean to suggest that the standard for granting a stay here is the same as in the Supreme Court, the Supreme Court's standard, nonetheless, reflects the added burden that a litigant must satisfy in seeking a stay following an adverse appellate decision.

[3] In *Mohawk*, the Court commented, as follows –

In our estimation, postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.

130 S. Ct. at 606-07.

[4] *Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assur. Soc'y of the United States*, 406 F.3d 867, 877 n.5 (7th Cir. 2005); *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427 n.14 (3d Cir. 1991); *In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983); *In re Sealed Case*, 676 F.2d 793, 809 n.54 (D.C. Cir. 1982); *Transamerica Computer Co. v. Int'l Bus. Machs. Corp.*, 573 F.2d 646, 651 (9th Cir. 1978); *see also In re Parmalat Sec. Litig.*, 2006 WL 3592936, at *4 (S.D.N.Y. Dec. 1, 2006); *Amway Corp. v. Procter & Gamble Co.*, 2001 WL 1818698, at *2 (W.D. Mich. Apr. 3, 2001); *Gov't Guarantee Fund of the Republic of Finland v. Hyatt Corp.*, 182 F.R.D. 182, 187 (D.V.I. 1998); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 99-100 (D.N.J. 1990).

a waiver in any other Federal or State proceeding." Fed. R. Evid. 502(d).[5] If defendant truly is concerned that the production here would occasion a waiver of the privilege in other cases, it can easily remedy that matter by formally seeking relief under this rule. But, to date, it has skirted this issue. Moreover, in terms of minimizing any "damage" associated with this court's ruling, it also must be stressed that this case is subject to a Confidentiality Agreement and Protective Order which limits the use and further disclosure of records produced in this action, including those to be produced under this court's production order. *See Jicarilla Apache Nation v. United States*, 60 Fed. Cl. 413 (2004). In short, then, the potential that producing the documents in question would harm defendant in other cases appears remote.[6]

But what about the impact in this case? Defendant, of course, claims that irreparable harm will result if it is forced now to produce the documents. But, should subsequent review lead to the overturning of the Federal Circuit's decision, the court could order plaintiff to return to defendant the documents covered by the production order. While defendant contends that this remedy is inadequate – that the court cannot thereby "un-ring the bell" after the documents are produced – that simply is untrue. A procedure similar to that described – the preliminary provision of documents and the ordering of their return upon a subsequent determination that a privilege lies – is specifically sanctioned by recent amendments to the Federal Rules of Civil Procedure (and this court's rules). *See* Fed. R. Civ. P. 26(b)(5)(B); RCFC 26(b)(5)(B).[7] The

---

[5] Rule 502(d) was enacted by Congress in 2008. *See* Pub. L. No. 110-332, §1(a), 122 Stat. 3537. The legislative history indicates that the rule was adopted to resolve "longstanding disputes in the courts about the effect of certain disclosures of communications or information protected by the attorney-client privilege" and to avoid the notion that issues regarding the application of the privilege had to be litigated to the hilt in order to avoid inadvertent waivers of the privilege. 154 Cong. Rec. S1317-19 (Feb. 27, 2008) (statement of Sen. Leahy); *see also* 154 Cong. Rec. H7818-19 (Sept. 8, 2008) (statement of Rep. Jackson-Lee).

[6] Defendant is simply wrong in suggesting that it will be irreparably harmed because production in this case will engender litigation by third parties seeking the same sorts of production. The reality is that, as long as defendant adheres to its view of the law, disputes regarding the production of such documents inevitably will arise in other tribal trust cases, regardless of the outcome of this case.

[7] RCFC 26(b)(5)(B) provides –

If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information

drafters of the latter rule hardly felt that the temporary provision of documents ultimately determined to be covered by a privilege would lead to irreparable harm. *See* Fed. R. Civ. P. 26(b)(5) advisory comm. notes (2006 amendment); *see also Mohawk*, 130 S. Ct. at 606-07. Nor is there any special reason for believing that such irreparable harm would materialize here – any more than it apparently did in other cases in which, faced with orders requiring the production of similar documents, defendant simply complied.[8] The short of the matter then is that defendant has not demonstrated that irreparable harm will occur if it complies with this court's production order.

Third, although defendant belittles the harm others might experience if its motion were granted, that harm plainly exists and is significant. As the case history discussed above reveals, the documents at issue have been withheld for an extraordinarily long time and their production has been the subject of multiple stays and extensions. While defendant now suggests that discovery in this matter could continue pending further appellate review of the production order, it never made, at least to the court's knowledge, that offer before – indeed, it appears that discovery has been largely halted as the result of the prior interlocutory review. Plaintiff persuasively argues that future discovery would be hampered if the documents in question were not revealed, noting, in particular, that it cannot proceed with important depositions until those documents are reviewed. Moreover, as plaintiff and the *amici* note, granting defendant's stay would mean that this case would be delayed not only while defendant ponders whether to pursue further relief, but also while the relevant courts decide whether to permit such review, no matter how strong or weak the petitions may be – in the case of the Supreme Court, for example, the granting of defendant's stay motion could delay further discovery in this case until a petition for certiorari is denied, which might not occur until October 4, 2010 (the first Monday in October).

Extended delay of production heightens the risk that relevant witnesses will experience memory loss or diminished levels of recollection. And that is not all. A Record Retention Order was issued in this case because defendant, in the past, failed adequately to protect various tribal trust documents. *See also Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138-39 (2004). Despite the existence of that order, a number of documents relevant to this case were later destroyed. *See* Defendant's July 9, 2007, Notice of Inadvertent Document Destruction (describing a government contractor's destruction of 15 boxes of government records including documents relating to financial transactions of the Department of the Interior and the Bureau of

---

   to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

[8] The government previously has been ordered by this court to produce tribal trust administration documents under the fiduciary exception. *See Osage Nation*, 66 Fed. Cl. at 253. And in that instance, after being given four days to comply, defendant requested only an additional week, at which time it produced the documents. Moreover, there is no indication that defendant resisted the production orders in *Cobell* and *Shoshone*. Seemingly, defendant's actions in these earlier cases give its claims of dire circumstances here a somewhat hollow ring.

Indian Affairs).  And, despite the existence of similar preservation orders, relevant documents in the possession of defendant likewise have been mishandled or lost in other tribal cases.[9]  In yet another instance, 581 boxes of documents that were thought to have been preserved were, upon examination, found to have suffered water and mold damage requiring immediate testing and possible remediation.[10]  Any significant further delay, then, threatens the loss or destruction of further evidence relevant to this case, with obvious negative impact on plaintiff's ability to mount a successful case.  Contrary to defendant's claims, then, the situation here is hardly one in which the equities are stacked in its favor.  The reverse is far more likely to be the case.

Fourth, and finally, with this case now having been pending in this court for more than *eight years*, the public interest seemingly lies in favor of moving forward.[11]  While defendant emphasizes the precedential impact of the privilege ruling herein, it seemingly turns a blind eye to the fact that the precedents developed in this case may aid the resolution of more than ninety similar cases pending before this court, many of which are currently in settlement discussions.  Further delay of this case threatens to postpone the ultimate resolution not only of this case, but of these other cases, as well, a factor that further militates against granting defendant the potentially lengthy stay it seeks.  Lastly, it should be observed that by the time production is ordered in the provisions made below, more than forty-five days will have elapsed since the Federal Circuit dismissed defendant's mandamus petition – in other words, defendant will have had the full time allotted by the Federal Circuit's rule in which to file a petition for rehearing.  *See* Fed. Cir. R. 40(a).  Given the countervailing considerations, the court does not believe that defendant can reasonably expect more.

---

[9]  *See, e.g.*, *Pueblo of Laguna v. United States*, No. 02-24L, Nov. 11, 2005, Joint Status Report (discussing an incident at the National Archives and Records Administration in which permanent files were found in waste receptacles), and Defendant's July 9, 2007, Notice Concerning Inadvertent Document Destruction (describing the incident, also reported in this case, in which 15 boxes including Department of Interior and Bureau of Indian Affairs financial documents were destroyed by a government contractor).

[10]  *See Navajo Nation v. United States*, No. 06-945L, Defendant's Apr. 15, 2008, Notice of Discovery of Document Damage and July 8, 2008 Suppl. Notification (identifying 581 Bureau of Indian Affairs boxes threatened by water and/or mold damage), Defendant's Aug. 6, 2008, Notice of Discovery of Document Damage and Oct. 7, 2008, Suppl. Notification (describing water-damaged boxes found in an Arizona Bureau of Indian Affairs building), and Defendant's Dec. 10, 2008, Report (identifying damaged maps and aerial photographs at the Fort Defiance Bureau of Indian Affairs agency).

[11]  This case was inactive for nearly six years while the parties attempted to resolve this matter through alternative dispute resolution.  While that time was wasted, neither can it be disregarded.  *Nken*, 129 S. Ct. at 1754 ("'No court can make time stand still'" (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9 (1942))).

Simply put, with little likelihood of success and equities weighted toward plaintiff, there is little reason for the court to accommodate defendant's request for an extended stay. Nonetheless, as mentioned, the court will further extend the deadline for production of the documents in question to permit defendant time in which to file a petition for rehearing with, and to seek a stay from, the Federal Circuit. Accordingly:

1. Defendant's motion for a stay pending the expiration of defendant's time to seek all appellate relief is **DENIED**;

2. On or before **February 17, 2010**, defendant shall produce to plaintiff any documents subject to this court's production order that have not yet been produced. Absent the entry of a stay by another court, this deadline will not be extended for any reason.

**IT IS SO ORDERED**.

s/ Francis M. Allegra  
Francis M. Allegra  
Judge