# In the United States Court of Federal Claims

No. 02-25L

(Filed: April 13, 2016)

| | |
|---|---|
| **JICARILLA APACHE NATION,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **UNITED STATES,** ) <br> ) <br> **Defendant.** ) <br> ) | Indian breach-of-trust case; claim of alleged breach of fiduciary duties by the Bureau of Indian Affairs as trustee of Tribe's funds; Phase 2 of case; pre-trial *in limine* motions |

Steven D. Gordon, Holland & Knight, LLP, Washington, D.C. for plaintiff.  With him at the hearing was Christine Walz, Holland & Knight, Washington, D.C.

Stephen Finn, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C. for defendant.  With him on the briefs were John C. Cruden, Assistant Attorney General, and Stephen R. Terrell, Trial Attorney, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.  Of counsel was Barbara M.R. Marvin, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., Gladys Cojocari, Dondrae Maiden, Holly Clement, Michael Bianco, and Karen Boyd, Office of the Solicitor, United States Department of the Interior, Washington, D.C., and Thomas Kearns and Rebecca Saltiel, Bureau of the Fiscal Service, United States Department of the Treasury, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Plaintiff Jicarilla Apache Nation ("Jicarilla") has filed two motions *in limine* seeking to prevent the government from introducing various exhibits and expert testimony into evidence during the Phase 2 trial scheduled to take place in July 2016 in this Indian breach-of-trust case.  *See* Pl.'s Mot. *in Limine* to Exclude Exhibits Pertaining to Private Investments ("Pl.'s Private Invest. Mot."), ECF No. 413; Pl.'s Mot. *in Limine* to Exclude the Testimony of William G. Hamm ("Pl.'s Hamm Mot."), ECF No. 414.  Jicarilla contends that Dr. William Hamm, one of the government's proposed expert witnesses, is not qualified to opine on damages resulting from allegedly imprudent investment activities.  Jicarilla further asserts that aspects of Dr. Hamm's testimony regarding pre-judgment interest, along with several proffered exhibits regarding

Jicarilla's private non-trust investments, are irrelevant to this case and should be excluded. A hearing on these motions was held on April 4, 2016.[1]

## BACKGROUND

Jicarilla alleges that the United States ("defendant" or "government") through the actions of the Bureau of Indian Affairs ("BIA"), Department of the Interior, breached its fiduciary duties as trustee of Jicarilla's funds by making imprudent investment choices between 1974 and 2012. *See* Pl.'s Mem. of Contentions of Fact and Law (Phase 2 Trial) ("Pl.'s Pre-Trial Br.") at 1, ECF No. 442; *see also* Am. Compl., ECF No. 12. This case was originally assigned to Judge Francis M. Allegra, who bifurcated it into three phases. Order of Oct. 7, 2008, ECF No. 152. Phase 1 would cover claims relating to defendant's alleged mismanagement of trust funds prior to September 30, 1992, *id.*, Phase 2 would cover fund-mismanagement claims after that date, Hr'g Tr. 12:13-22 (Jan. 14, 2016), ECF No. 461, and Phase 3 would relate to oil and gas and timber claims, *id.* Judge Allegra held a trial in November 2011 on Phase 1 and found that the United States had "grossly mismanaged [Jicarilla's] funds" during the pertinent time, "entitling plaintiff to damages in the amount of $21,017,491.99." *Jicarilla Apache Nation v. United States*, 112 Fed. Cl. 274, 278 (2013) (the "Phase 1 award"). Nonetheless, Judge Allegra declined to enter final judgment on Phase 1 until after Phase 2 had concluded. His decision to defer judgment was based on Jicarilla's claim that the Phase 1 award should have been included in its federal trust account as of October 1992. Therefore, in Jicarilla's view, it is entitled to additional investment returns on that Phase 1 award during the Phase 2 period. Owing to this claim, Judge Allegra decided that Phase 1 damages could be finally decided only as a component of a judgment reached at the culmination of Phase 2. *Id.* at 312 ("[Q]uestions regarding how much [Jicarilla's] accounts would have increased from October 1, 1992 to present day are inextricably intertwined with the calculation of other underinvestment damages owed, if any, for the same period."). For these reasons, this court's Phase 2 decision will result in a final judgment covering both Phases 1 and 2.

Judge Allegra scheduled a trial on Phase 2 to begin April 20, 2015. Order of Oct. 20, 2014, ECF No. 410. Because of Judge Allegra's untimely illness and death, however, that trial date was vacated and the case was reassigned, first to Judge Mary Ellen Coster Williams and then to the undersigned. *See* Order of Jan. 7, 2016, ECF No. 456. Trial of Phase 2 is now scheduled to begin on July 11, 2016. Order of Jan. 14, 2016, ECF No. 459.

Phase 2 presents the questions of (1) whether the United States breached its fiduciary duties by imprudently investing funds in Jicarilla's Proceeds of Labor account, which receives

---

[1]The case has an extensive history, having been before the Supreme Court, *see United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011) (ruling that the common law "fiduciary" exception to attorney-client privilege did not extend to the federal government in its capacity as "trustee" of Indian funds), the Court of Appeals for the Federal Circuit on several occasions, *see*, *e.g.*, *In re United States*, 590 F.3d 1305 (Fed. Cir. 2009), *rev'd and remanded sub nom. United States v. Jicarilla Apache Nation*, 564 U.S. 162, and this court on numerous occasions, *see*, *e.g.*, *Jicarilla Apache Nation v. United States*, 120 Fed. Cl. 135 (2015) (staying the parties' obligations under the court's pretrial order for the second phase of the litigation).

funds from severance, timber, mineral, ranching, and farming activities; (2) whether the United States breached its fiduciary duties by imprudently investing funds in Jicarilla's Water Rights Settlement Account, which was created by statute, *see* Pub. L. No. 102-441, § 8, 106 Stat. 2237, 2239 (forming the "Jicarilla Apache Water Resources Development Trust Fund"); and (3) whether Jicarilla is entitled to further investment returns on the Phase 1 award during the Phase 2 period. Pl.'s Pre-Trial Br. at 1; United States' Phase 2 Pre-Trial Mem. of Contentions of Fact and Law ("Def.'s Pre-Trial Br.") at 5-6, ECF No. 441; *see also Jicarilla*, 112 Fed. Cl. at 311-12.

The Phase 2 trial promises to be a "battle of the experts . . . over whether the funds in Jicarilla's accounts were prudently invested and, if not, how great a loss Jicarilla suffered." Pl.'s Pre-Trial Br. at 2. To prove its case, Jicarilla will generally rely upon expert testimony from Kevin W. Nunes and Peter A. Ferriero of Rocky Hill Advisors, Inc., who reportedly will offer evidence that the government improperly focused on short-term and undiversified investment strategies. *Id.* The government indicates it will respond by offering evidence that its investment strategies were reasonable under the circumstances, given statutory and regulatory limitations and Jicarilla's preferences and liquidity needs. Def.'s Pre-Trial Br. at 5. The government's case will be supported with expert testimony from Professor Laura Starks and Dr. William Hamm. *Id.* at 25-28. Jicarilla will rebut these witnesses with expert testimony from Professor Michael Goldstein. Pl.'s Pre-Trial Br. at 17.

## ANALYSIS

Pursuant to Fed. R. Evid. 104(a), a trial judge must determine "at the outset" whether an expert witness is qualified or whether his or her opinions constitute admissible evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). "These matters should be established by a preponderance of proof." *Id.* at 592 n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

### A.  *Jicarilla's Motion to Exclude the Testimony of Dr. William G. Hamm*

Jicarilla makes two arguments regarding Dr. Hamm's testimony. First, Jicarilla contends that Dr. Hamm should be prohibited from testifying about pre-judgment interest on the $21 million Phase 1 award because the issue is irrelevant. Pl.'s Hamm Mot. at 1. Second, Jicarilla asserts that Dr. Hamm should not be allowed to testify about whether the investment strategies adopted by BIA were prudent and about damages suffered by Jicarilla because he is not an expert on management of trust funds. *Id.*

### 1.  *Relevance of testimony about pre-judgment interest.*

The government proposes to have Dr. Hamm testify about what interest rate could be applied to the Phase 1 award to determine how it might have grown during Phase 2. Def.'s Opp'n to Pl.'s Hamm Mot. ("Def.'s Hamm Opp'n") at 5, ECF No. 416. In response, Jicarilla argues that Dr. Hamm's testimony about interest rates is irrelevant because Jicarilla does not seek interest on the $21 million award. Pl.'s Hamm Mot. at 1. Rather, Jicarilla concurs with Judge Allegra's ruling at the end of the first trial that "what plaintiff seeks as additional damages

is investment income it claims was lost during the period between October 1, 1992 and the end of fiscal year 2011 [now September 30, 2012]." Pl.'s Hamm Mot. at 10-11 (quoting *Jicarilla*, 112 Fed. Cl. at 311) (alteration in motion). This is income that "would have been received if the amount of principal produced by proper investment practices as of October 1, 1992, were further invested properly." *Id*. The income "does not represent interest on the damages owed, but rather is an actual component of those damages." *Id*.

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 (relevant evidence is admissible unless barred by some source of law). In this case, pre-judgment interest is not "of consequence in determining the action" pursuant to Rule 401 because Jicarilla does not seek pre-judgment interest. Instead, in Phase 2, the court will focus on "the prudence of defendant's investment practices during [the] extended period," "the alternative investments that might have been available during [that time]," and particularly an "appropriate investment proxy" for that duration. *Jicarilla*, 112 Fed. Cl. at 311. Accordingly, testimony about pre-judgment interest during the Phase 2 period is irrelevant and shall not be admitted into evidence.

      2. *Qualification of Dr. Hamm as an expert witness on prudent trust strategies.*

Pursuant to Fed. R. Evid. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact . . . ; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Dr. Hamm, an economist by training who has overseen and advised several investment funds, is projected to testify about the correct measure of damages if the court should find a breach of duty. In general, he assumes various breaches of duty and then uses different investment benchmarks that approximate a hypothetical but-for world in which there is no breach. *See, e.g.*, Pl.'s Hamm Mot. Ex. 1 ("Hamm Report") ¶¶ 139, 158, 162. Jicarilla contends that Dr. Hamm's opinions are "unreliable" and that he is not "qualified" to opine on these subjects. Pl.'s Hamm Mot. at 11, 14. The government's contravening opposition emphasizes Dr. Hamm's "forty-six year career in economics[, which] has encompassed significant investment-related experience in both the public and private sectors." Def.'s Hamm Opp'n at 6. Jicarilla counters that Dr. Hamm "has never been a professional investment manager and [that his] very limited experience in investment management (or the investment of trust funds) qualifies him, at best, as a knowledgeable amateur." Pl.'s Hamm Mot. at 13.

Dr. Hamm has a Ph.D. in economics from the University of Michigan, and he has studied financial risk, modern portfolio theory, and the time value of money. Def.'s Hamm Opp'n, Ex. 1 (Dep. of William G. Hamm ("Hamm Dep.")), at 21:2-12; Ex. 2, (Decl. of William G. Hamm ("Hamm Decl.")) ¶ 3. He spent ten years working in the field of finance, and he served as Chief Operating Officer of the Federal Home Loan Bank of San Francisco, where he "was accountable to the President and the Board of Directors for the prudent management of a $5-6 billion fixed-income investment portfolio, as well as a portfolio of complex derivative instruments with a notional value of $30 billion." Hamm Decl. ¶ 5 (footnote omitted). He also served on the

4

investment committees of LECG, LLC; Freedom from Hunger; and Berkeley Research Group, LLC.  *Id.* ¶ 7.  He states that the Berkeley Research Group committee managed roughly $40 million in 401-k contributions made by more than 600 company employees.  *Id.* ¶ 8.  He described his analytical methodology in his expert report, which focused on determining Jicarilla's actual non-investment receipts and disbursements, analyzing the Tribe's liquidity needs, and identifying alternative investment strategies.  Hamm Report ¶ 82.  In his work on this case, Dr. Hamm avers that he reviewed documents relevant to deriving a prudent strategy for investing of Jicarilla's trust funds.  *Id.*  Even so, in his deposition, he conceded that he "didn't really review the government's management of the trust fund," Hamm Dep. 44:13-14, but rather was "looking at what a hypothetical prudent trustee would have done under th[e] circumstances," *id.* 44:21 to 45:2; *see also* Hamm Report ¶¶ 81-85; *id.* ¶¶ 86-163 (setting out hypothetical returns in a non-breach world, and explaining selection of various benchmarks).

Jicarilla insists that Dr. Hamm's opinion is not based on "'reasoning or methodology . . . beyond his observations based on the facts in evidence'" and that "his experience in this field is simply too meager to warrant any reliance by this [c]ourt."  Pl.'s Hamm. Mot. at 14 (quoting *Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 573 (2003), *aff'd in part and rev'd in part on other grounds*, 407 F.3d 1352 (Fed. Cir. 2005)).  In *Westfed*, the government proffered Dr. Hamm as an expert on the thrift industry and banking.  55 Fed. Cl. at 569-70.  The plaintiff in that case similarly argued that Dr. Hamm's opinion was based only upon documents produced by the parties, and that he had too little experience to offer a reliable opinion on that basis.  *Id.* at 573.  Although the *Westfed* court commented that it could not prior to trial "discern a particular reasoning or methodology" that had been applied by Dr. Hamm "beyond his observations based on the facts in evidence," *id.*, it ultimately decided not to preclude Dr. Hamm's testimony but rather "to admit the testimony and give it such weight as the court finds it to be entitled to," *id.* at 575.

Here, Dr. Hamm's report generally explains the methodology underlying his opinion.  Hamm Report ¶ 82.  That explanation suffices for the purpose, even though Dr. Hamm may not previously have applied the particular identified methodology in any of his prior work and experience.  *See City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 981, 999 (D. Minn. 2014) (permitting economist to opine on prudence and damages in action alleging imprudent investment, based on hypothetical benchmark comparison analysis).  Given his background, the court tentatively finds that Dr. Hamm may be "qualified as an expert" on prudent investment "by knowledge, skill, experience, training, [and] education" within the meaning of Fed. R. Evid. 702.  *See Alco Indus., Inc. v. Wachovia Corp.*, 527 F. Supp. 2d 399, 405-06 (E.D. Pa. 2007) (permitting economist to serve as expert witness as to whether investment portfolio was diversified, in action alleging breach of fiduciary duty by imprudent investment).  The court will make a final determination about Dr. Hamm's qualifications after *voir dire* at trial.

      B.  *Jicarilla's Motion to Exclude Evidence of Its Private, Non-Trust Investments*

Jicarilla challenges the government's expressed intent to seek admission at trial of selected documents relating to Jicarilla's private investment decisions during the Phase 2 period.  Pl.'s Private Invest. Mot. at 3 & Sched. A (listing the documents to which Jicarilla objects).  The

"vast majority" of these documents are account statements from 1993 to 1997 for a single account held by Jicarilla at Sunwest Bank. *Id.* Additionally, a limited set of documents related to Jicarilla's Water Rights Trust Fund Application are also at issue. *See id.* at 4.[2] Jicarilla concedes that the Sunwest account documents on a contemporaneous basis were before the Superintendent of the Jicarilla Agency of the BIA because it had explicitly provided those documents to the Superintendent. *Id.* at 3. The Tribe represents that the Sunwest account "was established to receive earnings and periodic transfers from [Jicarilla's per capita distribution fund]'s principal, which were then distributed to tribal members based on" tribal council instructions. *Id.* In its motion, Jicarilla contends that this evidence is inadmissible under Fed. R. Evid. 401 because the manner in which Jicarilla invested these particular private funds is not relevant to the court's determination of whether the United States prudently invested Jicarilla's trust funds. *Id.* at 1.

As set out *supra*, at 4, evidence is relevant if it has "any tendency to make a fact more or less probable" and the fact is "of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 (providing that relevant evidence is admissible). "The Rule's basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587.

Jicarilla avers that it had provided the Sunwest account documents to the Superintendent "so that [the g]overnment could confirm that Jicarilla's money managers had invested the funds in the Income/Distribution Account in accordance with the strictures of 25 U.S.C. § 162a." Pl.'s Private Invest. Mot. at 5. Jicarilla accepts the general proposition that "information about the nature of the recipient accounts is relevant to testing [the] assumption that transfers to the tribe's private accounts were 'non-consumptive.'" Pl.'s Reply in Support of Private Invest. Mot. ("Pl.'s Reply") at 3, ECF No. 437-1. Non-consumptive withdrawals are indicative of tribal liquidity needs and of expert analysis of those needs. In contesting the relevance of the Sunwest account documentation, Jicarilla principally relies on two salient facts, *viz.*, that the particular Sunwest account is not representative of the Tribe's private investment strategies because the Sunwest account had a limited purpose – to hold funds prior to per capita distributions to tribal members – and that the account constituted a very small proportion of the Tribe's total funds held for private investment. Hr'g Tr. 20:1-13 (Apr. 4, 2016), ECF No. 465.[3] Jicarilla also contends that the government's managers of trust funds held for the Tribe either were not aware of the Sunwest

---

[2]Jicarilla's Water Rights Trust Fund application does not provide direct evidence of Jicarilla's private investments. Rather, that application provided general information about Jicarilla's investment goals and strategies:

> Jicarilla's application to remove these funds from trust included detailed information on its private investments and money managers, . . . to meet a regulatory requirement that a distribution plan demonstrate "[t]ribal investment goals and the strategy for achieving them" with respect to the Water Rights Trust Fund. *See* 11 C.F.R. § 1200.14.

Pl.'s Private Invest. Mot. at 4.

[3]Further citations to the hearing shall omit the date.

6

account or did not pay any attention to the investment criteria the Tribe applied to that account in setting the investment strategy appertaining to the trust funds the government held for the Tribe. Hr'g Tr. 19:13-25.

Separately, Jicarilla acknowledges that its Water Rights Trust Fund Application, Pl.'s Private Invest. Mot., Schedule A, JX 714, is "relevant to demonstrate its investment goals for the Water Rights Trust Fund and its strategy for achieving those goals." Pl.'s Reply at 1. This acknowledgement is of limited evidentiary importance because the government states that it "does not seek to introduce" the application "to prove the manner in which Jicarilla generally invested its private funds." United States' Opp'n to Private Invest. Mot. at 10, ECF No. 417.

The parties have contested the import of an order entered by Judge Allegra that resolved a dispute in which Jicarilla sought a protective order to bar discovery into its private investments. *Jicarilla Apache Nation v. United States*, 88 Fed. Cl. 1, 19-21 (2009). In that instance, the United States sought documents that were not already in its possession. But here, the United States seeks to admit documents that it had in its possession during the disputed periods of time. These documents may be probative of whether "the BIA calibrated its investments to take into account Jicarilla's non-trust ventures," which purpose Judge Allegra's prior order implicitly approved. *Id.* at 21.

Overall, the court discerns no basis on which to preclude the government from seeking to introduce at trial the two limited categories of documentary exhibits related to Jicarilla's investment of its private funds. The extent to which those documents disclose or pertain to an overarching investment strategy employed by the Tribe for its private funds remains to be established, and the court cannot now answer the questions of whether the government's trust fund managers were aware of the documents and whether they took them into account in investing the Tribe's trust funds. Those matters must be resolved at trial.

## CONCLUSION

Plaintiff's motion to exclude testimony of Dr. Hamm, ECF No. 414, is GRANTED IN PART, *i.e.*, with respect to pre-judgment interest, but is otherwise DENIED. Plaintiff's motion to exclude exhibits pertaining to private investments, ECF No. 413, is DENIED.

It is so ORDERED.

                                              s/ Charles F. Lettow
                                              Charles F. Lettow
                                              Judge